KYLE YAEGE, SBN 246918
HICKMAN & ROBINSON, LLP
701 B Street, Ste. 1310
San Diego, CA 92101
Telephone: (619) 819-8383
Email: kyle@hickmanrobinsonlaw.com

Bankruptcy Counsel for
Petitioning Creditors
Jalali Family Trust &
Jalali Family Trust Dated 08/31/2005

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In RE: | ) | Chapter 11 |
| | ) | |
| PLE MANAGEMENT, LLC | ) | Case No. 16-04508-LA11 |
| | ) | |
| Alleged Debtor. | ) | Judge Louise DeCarl Adler |
| | ) | |
| | ) | PETITIONING CREDITORS' EMERGENCY |
| | ) | MOTION FOR ORDER (1) PERMITTING |
| | ) | THE CURRENT RECEIVER TO ACT AS A |
| | ) | CUSTODIAN TO CONTINUE TO |
| | ) | ADMINISTER THE ALLEGED DEBTOR'S |
| | ) | PROPERTY AND (2) APPOINTING OF |
| | ) | THE CURRENT RECEIVER AS |
| | ) | CHAPTER 11 TRUSTEE; |
| | ) | MEMORANDUM OF POINTS AND |
| _____ | ) | AUTHORITIES |

### PETITIONING CREDITORS' EMERGENCY MOTION FOR ORDER (1) PERMITTING THE CURRENT RECEIVER TO ACT AS A CUSTODIAN TO CONTINUE TO ADMINISTER THE ALLEGED DEBTOR'S PROPERTY AND (2) APPOINTING OF THE CURRENT RECEIVER AS CHAPTER 11 TRUSTEE

**TO THE HONORABLE LOUISE DECARL ADLER, UNITED STATES BANKRUPTCY JUDGE, OFFICE OF THE UNITED STATES TRUSTEE, THE ALLEGED DEBTOR, AND TO ALL INTERESTED PARTIES:**

Petitioning Creditors the Jalali Family Trust and the Jalali Family Trust Dated 8/31/2005 (together, the "Petitioning Creditors" or "Movants") hereby move this Court for an order (1) permitting the current receiver to act as a custodian to continue to administer the Alleged Debtor's

property; and (2) appointing of the current receiver as Chapter 11 Trustee.  This motion for an order (1) permitting the current receiver to act as a custodian to continue to administer the Alleged Debtor's property; and (2) appointing of the current receiver as Chapter 11 Trustee ("Motion") is based upon the attached memorandum of points and authorities, the Court's records and files in the bankruptcy proceedings, the concurrently-filed Declarations of Bijan Jalali, Bahman Jalali, Krista Freitag, and Kyle Yaege, and upon such other and further matters as the Court may allow.  In support of the Motion, the Movants submit the following:

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  Introduction

The present case involves an involuntary chapter 11 proceeding filed by the Movants against the Alleged Debtor.  It is in the best interests of the Alleged Debtor's creditors, for the reasons set forth below, that the state-court appointed receiver be excused from the requirements of 11 U.S.C. §543 and be permitted to act as custodian and continue to administer the Alleged Debtor's property, and also be appointed as Chapter 11 trustee.

### II.  Statement of Facts

#### A.  Pre-Petition Case Background

Between May 2012 and December 2013, Petitioning Creditors collectively lent $901,000.00 to Nasser Palizban ("Palizban") and his ice cream distribution company, Quality Discount Ice Cream Distributors, Inc. ("Quality").  Those loans were formalized in written note agreements, each of which was secured by one or more deeds of trust recorded against three parcels of real property owned by Palizban through separate single purpose limited liability companies: (i) Cyrus Carroll, LLC ("Cyrus Carroll"); (ii) Kamron Evergreen, LLC ("Kamron"); and (iii) PLE Management, LLC ("PLE" or the "Alleged Debtor") (Palizban, Quality, Cyrus Carroll, Kamron, and PLE shall hereinafter collectively be referred to as the "Defaulting Parties").

In total, the parties entered into six promissory note agreements:

- Note 1: On or about May 16, 2012, Petitioning Creditor Jalali Family Trust made a loan in the amount of $201,000.00 to Defaulting Parties as borrowers.  The loan was documented by a written Promissory Note dated May 16, 2012 ("Note 1").  Under the terms of Note 1, Defaulting Parties agreed to repay the loan in monthly installments of principal and interest in the initial amount of $3,182.50 per month.  A true and correct copy of Note 1 is attached hereto as **Exhibit A.**

- Note 2: On or about May 17, 2012, Petitioning Creditor Jalali Family Trust dated 8/31/2005 made a loan in the amount of $200,000.00 to the Defaulting Parties.  The loan was documented by a written Promissory Note dated May 17, 2012 ("Note 2").  Under the terms of Note 2, Defaulting Parties agreed to repay the loan in monthly installments of principal and interest in the initial amount of $3,166.67 per month.  A true and correct copy of Note 2 is attached hereto as **Exhibit B.**

- Note 3: On or about December 14, 2012, Petitioning Creditor Jalali Family Trust dated 8/31/2005 made a loan in the amount of $100,000.00 to the Defaulting Parties.  The loan was documented by a written Promissory Note dated December 14, 2012 ("Note 3").  Under the terms of Note 3, Defaulting Parties agreed to repay the loan in monthly installments of principal and interest in the initial amount of $1,583.33 per month.  A true and correct copy of Note 3 is attached hereto as **Exhibit C.**

- Note 4: On or about December 14, 2012, Petitioning Creditor Jalali Family Trust made a loan in the amount of $100,000.00 to Defaulting Parties.  The loan was documented by a written Promissory Note dated December 14, 2012 ("Note 4").  Under the terms of Note 4, Defaulting Parties agreed to repay the loan in monthly installments of principal and interest in the initial amount of $1,583.33 per month.  A true and correct copy of Note 4 is attached hereto as **Exhibit D.**

- Note 5: On or about December 20, 2013, Petitioning Creditor Jalali Family Trust made a loan in the amount of $100,000.00 to Defaulting Parties.  The loan was documented by a written Promissory Note dated December 20, 2013 ("Note 5"). Under the terms of Note 5, Defaulting Parties agreed to repay the loan in monthly installments of principal and interest in the initial amount of $1,583.33 per month.  A true and correct copy of Note 5 is attached hereto as **Exhibit E.**

- Note 6: On or about December 20, 2013, Petitioning Creditor Jalali Family Trust dated 8/31/2005 made a loan in the amount of $200,000.00 to Defaulting Parties.  The loan was documented by a written Promissory Note dated December 20, 2013 ("Note 6").  Under the terms of Note 6, Defaulting Parties agreed to repay the loan in monthly installments of principal and interest in the initial amount of $3,166.67 per month.  A true and correct copy of Note 6 is attached hereto as **Exhibit F.**

Notes 1, 2, 3 and 4 were secured against the Defaulting Parties' ownership interests in the fleet, freezers, equipment and all other assets of the companies of Palizban located at any of its facilities and their 100% ownership in all real estate properties owned by Palizban in Kamron and PLE.  The property owned by Kamron has the APN: 8242-024-081 and is located at 17007 Evergreen Pl., City of Industry, CA 91745; the property owned by PLE has the APN: 166-250-29-00 and is located at 450 S. Melrose Dr., Vista, CA 92081.  These properties were transferred via a Deed of Trust dated June 30, 2015 (the "Kamron/PLE DOT") as security for Notes 1, 2, 3 and 4, which includes an assignment of rents.  A true and correct copy of the Kamron/PLE DOT is attached hereto as **Exhibit G.**

Notes 5 and 6 were secured against the Defaulting Parties' ownership interests in the fleet, freezers, equipment and all other assets, of the companies of Palizban located at any of its facilities and ownership in all real estate properties owned by Palizban in Cyrus Carroll.  The property owned

by Cyrus Carroll has the APN: 343-360-14 and is located at 9066 Carroll Way, San Diego, CA 92121.  This property was transferred via a Deed of Trust dated December 20, 2013 (the "Cyrus DOT") as security for Notes 5 and 6, which includes an assignment of rents.  A true and correct copy of the Cyrus DOT is attached hereto as **Exhibit H.**

Pursuant to paragraphs 6 and 7 of Notes 1-6, Defaulting Parties would be deemed to be in default of the notes if, for among other reasons, they failed to make any payments when due. Additionally, pursuant to paragraphs 7 and 8 of Notes 1-6, "[o]n the occurrence of any Event of Default, at the option of the Payee, all principal and other amounts owed under th[ese] Note[s] shall become immediately due and payable without notice or demand by the Payee."

In July 2015, Palizban, Quality, Cryus Caroll, Kamron, and PLE breached the note agreements by failing to pay an interest installment due, and have continued to fail to pay their obligations on said notes.  As a result, on October 14, 2015, Petitioning Creditors filed suit in the Superior Court of California, County of San Diego, Case Number 37-2015-00035619-CU-OR-NC (the "State Court Lawsuit") against Palizban, Quality, Cryus Carroll, Kamron, and PLE stemming from their breaches of the promissory notes.

Cyrus Carroll and Kamron responded to the filing of the State Court Lawsuit by filing separate Chapter 11 bankruptcy petitions in the United States Bankruptcy Court for the Southern District of California.  Those petitions were both filed on November 10, 2015  (The Cyrus Carroll Bankruptcy Case Number is 15-07230-LA11 and shall hereinafter be referred to as the "Cyrus Carroll Bankruptcy")  (the Kamron Bankruptcy Case Number is 15-07229-LA11 and shall hereinafter be referred to as the "Kamron Bankruptcy").

Among the causes of action in the State Court Lawsuit complaint was one seeking appointment of a receiver.  Pursuant to paragraph 3.4.2 of both of the deeds of trust, attached hereto as **Exhibits G** and **H,** upon the occurrence of any default: Petitioning Creditors "may…(d) obtain the

appointment of a receiver ex parte and without prior notice to Trustor, which notice Trustor hereby waives…"

On or around October 29, 2015, Petitioning Creditors sought to move the Court in the State Court Lawsuit on an ex parte basis to appoint a receiver of the three properties referenced above in the deeds of trust and owned by Kamron, PLE, and Cyrus Carroll (the "Collective Properties"). The filing of the Cyrus Carroll and Kamron Bankruptcy petitions stayed these proceedings, but the Petitioning Creditors did renew that ex parte motion for hearing to be held on February 1, 2016. In support of the Petitioning Creditors' ex parte motion, they presented evidence that the Defaulting Parties' breached Notes 1-6 by failing to make the monthly installment payments. They also presented evidence that upon notice to the Defaulting Parties that all rents generated from the Collective Properties be forwarded to them pursuant to the "Assignment of Rents" provisions of Notes 1-6 and the related deeds of trust, Defaulting Parties failed to respond to that request or otherwise turn over the rents as of that time.

On February 1, 2016, the Superior Court granted Petitioning Creditors' ex parte application seeking appointment of a receiver and temporary restraining order with respect to the real property owned by Alleged Debtor located at 450 S. Melrose Dr., Vista, CA 92081 [APN 166-250-29-00] (the "Subject Property"). A copy of the accompanying minute order is attached hereto as **Exhibit I.** A briefing schedule was established, and the motion for appointment of a receiver was thereafter held in the Court on March 11, 2016. The Court granted Petitioning Creditors' motion at that hearing. A copy of the accompanying minute order is attached hereto as **Exhibit J.** The Court thereafter entered a Modified Order Appointing Receiver on April 14, 2016, a true copy of which is attached hereto as **Exhibit K.**

The Modified Order Appointing Receiver, attached hereto as **Exhibit K**, specifies that upon the filing of a bankruptcy petition, the Receiver is to remain in possession and preserve the Subject Property pending a resolution on any motion for relief from the Receiver's obligation to turn over

property under 11 U.S.C. § 543, so long as any such motion is filed within 20 days after notice of the bankruptcy filing.  The complete language, along with any limitations on the Receiver's powers during this interim time period, is included on the Modified Order attached hereto as **Exhibit K,** items 24-27.

The Petitioning Creditors took action in early July 2016 to comply with all conditions required and ordered by the State Court for a receiver to take over the Subject Property. Specifically, a receiver posted bond in the amount of $5,000.00.  As a result, Krista Freitag ("Freitag" or the "Receiver") was appointed Receiver on or around July 8, 2016.  True and correct copies of the Notice of Bond Posting and Oath of Krista Freitag are attached collectively hereto as **Exhibit L.**

Of additional relevance are the facts surrounding a pending sale of the Subject Property.  In March of 2016, PLE entered into a contract for the sale of the Subject Property to Workspace Evolution, LLC (the "Prospective Buyer").  During the contingency period of the sale, PLE was unable to confirm its ability to convey clear title of the Subject Property, due to the existence of junior attachment liens.  Also during the contingency period, the Prospective Buyer was informed that major disputes existed with the two largest tenants in the Subject Property.  Specifically, one of those tenants was claiming thousands of dollars of tenant improvement allowance expenses and was threatening to discontinue payment of rent in order to offset its alleged allowance; and the other tenant's lease had exceeded the fixed time period expressly stated therein, and required a new written lease agreement.  PLE took little to no action to resolve these disputes.

In July of 2016, the Prospective Buyer expressed its intent to terminate the pending purchase agreement to Petitioning Creditors' counsel due to PLE's (i) failure to address its tenant disputes; and (ii) delay in addressing resolution of liens in order to convey clear title.  Petitioning Creditors' counsel has attempted to communicate with PLE's legal counsel regarding these issues, but has not received any explanation regarding the Alleged Debtor's mismanagement of the Subject Property.

**B.  The Involuntary Petition**

On July 26, 2016, the Petitioning Creditors filed the present involuntary bankruptcy case.

### III. Argument

**A.  The Receiver Should be Excused from Compliance with 11 USC § 543 (a), (b) and (c) and Allowed to Adminster Assets**

11 U.S.C. § 543(a) – (c) generally does not permit custodians to sell or fully administer assets after the commencement of a case.  *See Matter of Bodenheimer, Jones Szwak & Winchell LLP,* 592 F.3d 664, 674 (5th Cir. 2009).  However, the limitations of section 543(a) – (c) may be modified or excused if such modification was in the best interest of the estate's creditors.  *See* 11 U.S.C. § 543(d)(1); *See also In re Dill,* 163 B.R. 221, 226 (E.D.N.Y. 1994).

The Court, when considering whether to exercise its discretion under 11 U.S.C. § 543(d)(1), may consider several factors indicative of whether the interests of creditors would be better served. These factors have evolved to include: (1) whether there will be sufficient income to fund a successful reorganization; (2) whether the debtor will use the turnover property for the benefit of the creditors; (3) whether there has been mismanagement by the debtor; (4) whether or not there are avoidance issues raised with respect to property retained by a receiver, because a receiver does not possess avoiding powers for the benefit of the estate; and (5) the fact that the bankruptcy automatic stay has deactivated the state court receivership action.  *See Constable Plaza Associates,* 125 B.R. at 103-04 (citing cases);  *In re Northgate Terrace Apartments, Ltd.,* 117 B.R. 328, 332 (Bankr. S.D. Ohio 1990).  Courts have frequently excused turnover under section 543(d) where a receiver has been appointed by a state court and where the receiver will better serve the interests of creditors.  *See Vanderveer Estates Holding, LLC,* 293 B.R. 560, 562 (Bankr. E.D.N.Y. 2003); *see also In re Ofty Corp.,* 44 B.R. 479, 481 (Bankr. Del. 1984).

The facts of the instant case demonstrate that the Alleged Debtor and its related entities have a history of not only failing to pay their debts as they become due, but also have mismanaged the

Subject Property.  It has failed to turn over rents generated from the Subject Property despite Petitioning Creditors' demands pursuant to the Assignment of Rents provisions in the deeds of trust. To allow the Alleged Debtor to take control of the newly-created bankruptcy estate would essentially give it free reign to mismanage and improperly retain rents, which now constitute cash collateral. Any such action would be in violation of the Bankruptcy Code.  The Court should also be concerned with putting rents and other income in the hands of the Alleged Debtor.  Any concerns regarding misappropriation of rental income should point towards allowing Freitag to continue to manage the Subject Property.  Additionally, the Court in the State Court Lawsuit specifically found that Freitag was qualified to take possession and control of the Subject Property, manage and operate the Subject Property, and take over all financial management functions with respect to the Subject Property.  See **Exhibit K** attached hereto outlining the complete range of functions set forth with respect to Freitag's receivership.

The Alleged Debtor's mismanagement is further evidenced by its inability to take any action to effectuate the sale of the Subject Property to the Prospective Buyer or even manage its tenant disputes.  As stated above, the Alleged Debtor has been unresponsive to requests to address clear title concerns from the Prospective Buyer and concerns of its two largest tenants.  The continued mismanagement and unresponsiveness show that the Alleged Debtor is not at all qualified to administer its estate at this time.

Finally, upon information and belief, there are no avoidance issues raised with respect to the Subject Properties; as a result, allowing the Receiver to administer the estate will not preclude any avoidance actions, since none are known to exist at this time.

The Court should additionally note that this is an *involuntary* proceeding.  The Alleged Debtor did not file the instant case in order to reap any benefits provided by 11 U.S.C. §543.

Simply put, the bankruptcy estate and Subject Property is in much safer hands with the Receiver than the Alleged Debtor, and any consideration of the best interests of the estate's creditors

clearly points towards allowing the Receiver to retain control and be excused from the limitations set forth in 11 U.S.C. §543.

**B.  The Court Should Appoint the Receiver as Chapter 11 Trustee**

The Bankruptcy Code requires appointment of a chapter 11 trustee "[a]t any time after the commencement of the case but before confirmation of the plan, on request of a party in interest … and after notice and a hearing … (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case …; or (2) if such appointment is in the interest of creditors, any equity security holders, and other interests of the estate …" 11 U.S.C. § 1104(a).  In an involuntary chapter 11 case, a trustee may be appointed upon commencement of the case, prior to entry of the order for relief.  *See, e.g., In re Prof. Accountants Referral Servs., Inc.,* 142 B.R. 424, 429 (Bankr. D. Colo. 1992) ("appointment of a trustee during the gap period – before an order for relief is entered – is authorized and proper under 11 U.S.C. §§ 1104(a)(1), 105 and, by analogy, 303(g)."); *In re Patriot Aviation Servs., Inc.,* 384 B.R. 649, 650 (Bankr. S.D. Fla. 2008) (order appointing chapter 11 trustee was entered two days after involuntary petition was filed).

When the Court finds cause under section 1104(a)(1) of the United States Bankruptcy Code, appointment of a trustee is mandatory.  11 U.S.C. § 1104(a)(1) ("the court *shall* order the appointment of a trustee") (emphasis added); *see also In re Rivermeadows Assocs. Ltd.,* 185 B.R. 615, 617 (Bankr. D. Wyo. 1995) ("The appointment is mandatory under § 1104(a)(1) if a court finds cause"); *see also In re Colorado – UTE Elec. Ass'n,* 120 B.R. 164, 174 (Bankr. D. Colo. 1990) ("if the Court finds that cause for the appointment of a trustee exists, the Court has no discretion, but must appoint a trustee.").

As stated above, the Alleged Debtor has a history of not paying debts as they become due and mismanaging its funds and business operations.  Turnover of the Subject Property would allow the Alleged Debtor to once again retain control, mismanage the rents generated from that property

now constituting cash collateral, and continue to address tenant concerns and other issues.  Freitag's experience and ability to control the estate should allow her to be appointed as Chapter 11 Trustee. In addition to the fact that Freitag is competent to perform the duties of a Chapter 11 Trustee, she has not previously served in any capacity in this case and is a disinterested person within the meaning of 11 U.S.C. § 101(14).  She has no connections with the Alleged Debtor, its creditors, any other parties in interest, their respective attorneys, accountants, the United States Trustee, or any other person employed in the office of the United States Trustee.  She is not a creditor, an equity security holder, or an insider.  She is not, and was not, within two years before the date of the filing of a petition, a director, officer or employee of the Alleged Debtor, and she does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Alleged Debtor or for any other reason.

### IV. <u>Conclusion</u>

For the reasons set forth above, the Movants request that the Court issue an order (i) permitting the Receiver to act as a custodian to continue to administer the Alleged Debtor's property and be excused from turnover and the requirements of 11 U.S.C. 543; and (ii) appointing the Receiver as Chapter 11 Trustee, and for such other relief that the Court deems just and proper.

Dated: August 9, 2016                          _/s/ Kyle Yaege_____
                                                              Kyle Yaege,
                                                              Counsel for Petitioning Creditors
                                                              Jalali Family Trust &
                                                              Jalali Family Trust Dated 08/31/2005

# EXHIBIT A

## PROMISSORY NOTE
## (INTEREST-ONLY WITH BALLOON FINAL PAYMENT)

**$201,000** Amount of Note

This promissory note (the "Note") is made and effective 16th day of May, 2012, by and between Quality Discount Ice Cream Distributors, Inc. and Nasser Palizban, an individual and President of Quality Discount Ice Cream Distributors, Inc., jointly and severally as the "Borrower"), and , Jalali Family Trust (the "Lender" and together with the Borrower, the "Parties").

### 1.    PROMISE OF PAYMENT.

FOR VALUE RECEIVED, the Borrower promises to pay to the Payee, at 7265 Park Village Road , San Diego, CA 92129, or at such other place as the Payee may designate in writing from time to time, the principal amount of Two hundred one thousand US Dollars ($201,000.00), together with interest accruing on the unpaid balance thereof until due. The interest rate on this Note shall be an annual rate of interest equal to nineteen (19%) percent.  Interest shall be computed on the basis of a year of 365 days and the actual number of days elapsed.

### 2.    INTEREST PAYMENTS.

The Borrower will pay said interest to the Payee in equal installment payments of $3,182.50, on the first day of each month. Payments shall be to the Payee's address as designated above. Acceptance by the Payee of any payment differing from the designated payment listed above does not relieve the Borrower of the obligation to honor the requirements of this Note. Late Payment: In the event any payment required hereby shall not be paid within Ten (10) days after the same shall be due and payable, a late charge equal to six percent (6%) of the delinquent amount shall be immediately due and payable.

### 3.    INITIAL DATE.

The first interest payment under this Note is due and payable on the first day of June, 2012. A like payment shall be due on the same day of each succeeding month thereafter.

### 4.    PREPAYMENT AND MUTUAL OPTION TO RENEW

The Borrower may prepay any part of the principal of this Note at any time before maturity without penalty or premium.  This Note can be renewed if both parties agree on an extension.

### 5.    PAYMENT OF PRINCIPAL.

The entire outstanding principal balance, including any accrued interest, shall be due and payable in full on or before the 15th day of May, 2013.

## 6.    SECURITY FOR PAYMENT.

This Note is secured by and entitled to the benefits of security provisions.  The Security Provisions encumber the undersigned's ownership interest in the fleet, freezers and equipment (located at 2465 Coral Street, Vista, CA 92081 and 450 S. Melrose Drive, Vista, CA 92081) and the interest ownership in the all real estate properties owned by Nasser Palizban in individual LLCs located in southern CA (Mira Mar, City of Industry, Vista, Carson and Riverside).

## 7.    EVENTS OF DEFAULT.

The Borrower will be deemed to be in default under this Note on the occurrence of any of the following events (each an "Event of Default"): (i) on the Borrower's failure to make any payment when due under this Note, which failure continues for a period of more than ten (15) days after such due date; (ii) on the filing regarding the Borrower of any voluntary or involuntary petition for relief under the United States Bankruptcy Code or the initiation of any proceeding under federal law or law of any other jurisdiction for the general relief of debtors; or (iii) on the execution by the Borrower of an assignment for the benefit of creditors or the appointment of a receiver, custodian, trustee, or similar party to take possession of the Borrower's assets or property.

## 8.    ACCELERATION; REMEDIES ON DEFAULT.

On the occurrence of any Event of Default, at the option of the Payee, all principal and other amounts owed under this Note shall become immediately due and payable without notice or demand by the Payee, and the Payee, in addition to its rights and remedies under this Note, may pursue any legal or equitable remedies that are available to it.

## 9.    WAIVER OF PRESENTMENT; DEMAND.

The Borrower hereby waives presentment, demand, notice of dishonor, notice of default or delinquency, notice of protest and nonpayment, notice of costs, expenses, or losses and interest thereon, notice of interest on interest and late charges, and diligence in taking any action to collect any sums owing under this Note, including (to the extent permitted by law) waiving the pleading of any statute of limitations as a defense to any demand against the undersigned, or in proceeding against any of the rights or interests in or to properties securing payment of this Note.

## 10.    TIME OF ESSENCE.

Time is of the essence with respect to every provision of this Note.

## 11.    SUCCESSORS AND ASSIGNS.

All references in this Note to the Borrower and the Payee shall be deemed to include, as applicable, a reference to their respective successors and assigns. The provisions of this Note shall be binding upon and shall inure to the benefit of the successors and assigns of the Borrower and the Payee.

## 12.    NOTICE.

Any notice or other communication provided for herein or given hereunder to a party hereto shall be in writing and shall be given in person, by overnight courier, or by mail (registered or certified mail, postage prepaid, return receipt requested) to the respective party as follows:

If to the Payee:

Jalali Family Trust
7265 Park Village Road
San Diego, CA 92129

If to the Borrower:

Quality Discount Ice Cream Distributors, Inc.
Nasser Palizban, President
450 S. Melrose Drive, Suite 110
Vista, CA 92081

## 13.    GOVERNING LAW.

This Note shall be governed as to validity, interpretation, construction, effect, and in all other respects by the laws and decisions of the State of California, without regards to its conflict-of-law provisions. The Borrower hereby irrevocably consents to the jurisdiction of the courts of San Diego County, California with respect to any matter arising under this Note, and further irrevocably consents to service of process by hand delivery to the address listed above for the Borrower.

## 14.    ENTIRE AGREEMENT.

This Note constitutes the final, complete, and exclusive statement of the agreement of the parties with respect to the subject matter hereof, and supersedes any and all other prior and contemporaneous agreements and understandings, both written and oral, between the parties.

## 15.    NO IMPLIED WAIVER.

The Payee's failure to exercise any right or remedy provided in this Note shall not be construed as a waiver of any future exercise of that right or exercise of any other right or remedy to which the Payee may be entitled.

## 16.    COLLECTION COSTS AND ATTORNEYS' FEES.

The Borrower agrees to pay any and all costs incurred by the Payee in collecting sums payable under this Note, including reasonable attorneys' fees and court costs in addition to other amounts due, without protest of any kind.

## 17.    SEVERABILITY.

If one or more of the provisions of this Note shall be declared or held to be invalid, illegal, or unenforceable in any respect in any jurisdiction, the validity, legality, and enforceability of the remaining provisions hereof shall not in any way be affected or impaired thereby and any such declaration or holding shall not invalidate or render unenforceable such provision in any other jurisdiction.

## 18.    HEADINGS.

Headings used in this Note are provided for convenience only and shall not be used to construe meaning or intent.

**IN WITNESS WHEREOF**, the parties have executed this Note as of the date first above written.


**BORROWER**    Quality Discount Ice Cream Distributors, Inc.

By: _____

Name: Nasser Palizban

Title: President

**EXHIBIT B**

# PROMISSORY NOTE
## (INTEREST-ONLY WITH BALLOON FINAL PAYMENT)

**$200,000** Amount of Note

This promissory note (the "Note") is made and effective 17th day of May, 2012, by and between Quality Discount Ice Cream Distributors, Inc. and Nasser Palizban, an individual and President of Quality Discount Ice Cream Distributors, Inc., jointly and severally as the ("Borrower"), and , Jalali Family Trust dated 08-31-2005 (the "Lender" and together with the Borrower, the "Parties").

## 1.    PROMISE OF PAYMENT.

FOR VALUE RECEIVED, the Borrower promises to pay to the Payee, at 15 Charity, Irvine, CA 92612, or at such other place as the Payee may designate in writing from time to time, the principal amount of Two hundred thousand US Dollars ($200,000.00), together with interest accruing on the unpaid balance thereof until due. The interest rate on this Note shall be an annual rate of interest equal to nineteen (19%) percent. Interest shall be computed on the basis of a year of 365 days and the actual number of days elapsed.

## 2.    INTEREST PAYMENTS.

The Borrower will pay said interest to the Payee in equal installment payments of $3,166.67, on the first day of each month. Payments shall be to the Payee's address as designated above. Acceptance by the Payee of any payment differing from the designated payment listed above does not relieve the Borrower of the obligation to honor the requirements of this Note. Late Payment: In the event any payment required hereby shall not be paid within Ten (10) days after the same shall be due and payable, a late charge equal to six percent (6%) of the delinquent amount shall be immediately due and payable.

## 3.    INITIAL DATE.

The first interest payment under this Note is due and payable on the first day of June, 2012. A like payment shall be due on the same day of each succeeding month thereafter.

## 4.    PREPAYMENT AND MUTUAL OPTION TO RENEW

The Borrower may prepay any part of the principal of this Note at any time before maturity without penalty or premium. This Note can be renewed if both parties agree on an extension on a month to month basis.

5.    **PAYMENT OF PRINCIPAL.**

The entire outstanding principal balance, including any accrued interest, shall be due and payable in full on or before the 16th day of May, 2013.

6.    **SECURITY FOR PAYMENT.**

This Note is secured by and entitled to the benefits of security provisions.  The Security Provisions encumber the undersigned's ownership interest in the fleet, freezers and equipment and other assets of the Company (all assets) located at any of their facilities and their 100% ownership in the all real estate properties owned by Nasser Palizban in individual LLCs located in southern CA (Mira Mar, City of Industry, Vista, Carson and Riverside).

7.    **EVENTS OF DEFAULT.**

The Borrower will be deemed to be in default under this Note on the occurrence of any of the following events (each an "Event of Default"): (i) on the Borrower's failure to make any payment when due under this Note, which failure continues for a period of more than ten (10) days after such due date; (ii) on the filing regarding the Borrower of any voluntary or involuntary petition for relief under the United States Bankruptcy Code or the initiation of any proceeding under federal law or law of any other jurisdiction for the general relief of debtors; or (iii) on the execution by the Borrower of an assignment for the benefit of creditors or the appointment of a receiver, custodian, trustee, or similar party to take possession of the Borrower's assets or property.

8.    **ACCELERATION; REMEDIES ON DEFAULT.**

On the occurrence of any Event of Default, at the option of the Payee, all principal and other amounts owed under this Note shall become immediately due and payable without notice or demand by the Payee, and the Payee, in addition to its rights and remedies under this Note, may pursue any legal or equitable remedies that are available to it.

9.    **WAIVER OF PRESENTMENT; DEMAND.**

The Borrower hereby waives presentment, demand, notice of dishonor, notice of default or delinquency, notice of protest and nonpayment, notice of costs, expenses, or losses and interest thereon, notice of interest on interest and late charges, and diligence in taking any action to collect any sums owing under this Note, including (to the extent permitted by law) waiving the pleading of any statute of limitations as a defense to any demand against the undersigned, or in proceeding against any of the rights or interests in or to properties securing payment of this Note.

## 10.   TIME OF ESSENCE.

Time is of the essence with respect to every provision of this Note.

## 11.   SUCCESSORS AND ASSIGNS.

All references in this Note to the Borrower and the Payee shall be deemed to include, as applicable, a reference to their respective successors and assigns. The provisions of this Note shall be binding upon and shall inure to the benefit of the successors and assigns of the Borrower and the Payee.

## 12.   NOTICE.

Any notice or other communication provided for herein or given hereunder to a party hereto shall be in writing and shall be given in person, by overnight courier, or by mail (registered or certified mail, postage prepaid, return receipt requested) to the respective party as follows:

If to the Payee:

Jalali Family Trust dated 08-31-2005
15 Charity
Irvine, CA 92612

If to the Borrower:

Quality Discount Ice Cream Distributors, Inc.
Nasser Palizban, President
450 S. Melrose Drive, Suite 110
Vista, CA 92081

## 13.   GOVERNING LAW.

This Note shall be governed as to validity, interpretation, construction, effect, and in all other respects by the laws and decisions of the State of California, without regards to its conflict-of-law provisions. The Borrower hereby irrevocably consents to the jurisdiction of the courts of San Diego County, California with respect to any matter arising under this Note, and further irrevocably consents to service of process by hand delivery to the address listed above for the Borrower.

## 14.   ENTIRE AGREEMENT.

This Note constitutes the final, complete, and exclusive statement of the agreement of the parties with respect to the subject matter hereof, and supersedes any and all other prior and contemporaneous agreements and understandings, both written and oral, between the parties.

### 15.    NO IMPLIED WAIVER.

The Payee's failure to exercise any right or remedy provided in this Note shall not be construed as a waiver of any future exercise of that right or exercise of any other right or remedy to which the Payee may be entitled.

### 16.    COLLECTION COSTS AND ATTORNEYS' FEES.

The Borrower agrees to pay any and all costs incurred by the Payee in collecting sums payable under this Note, including reasonable attorneys' fees and court costs in addition to other amounts due, without protest of any kind.

### 17.    SEVERABILITY.

If one or more of the provisions of this Note shall be declared or held to be invalid, illegal, or unenforceable in any respect in any jurisdiction, the validity, legality, and enforceability of the remaining provisions hereof shall not in any way be affected or impaired thereby and any such declaration or holding shall not invalidate or render unenforceable such provision in any other jurisdiction.

### 18.    HEADINGS.

Headings used in this Note are provided for convenience only and shall not be used to construe meaning or intent.

**IN WITNESS WHEREOF**, the parties have executed this Note as of the date first above written.


**BORROWER**    Quality Discount Ice Cream Distributors, Inc.

By: _____
Name: Nasser Palizban
Title: President

# EXHIBIT C

## PROMISSORY NOTE
## (INTEREST-ONLY WITH BALLOON FINAL PAYMENT)

### $100,000 Amount of Note

This promissory note (the "Note") is made and effective 14th day of December, 2012, by and between Quality Discount Ice Cream Distributors, Inc. and Nasser Palizban, an individual and President of Quality Discount Ice Cream Distributors, Inc., jointly and severally as the ("Borrower"), and , Jalali Family Trust dated 08-31-2005 (the "Lender" and together with the Borrower, the "Parties").

### 1.     PROMISE OF PAYMENT.

FOR VALUE RECEIVED, the Borrower promises to pay to the Payee, at 15 Charity, Irvine, CA 92612, or at such other place as the Payee may designate in writing from time to time, the principal amount of One hundred thousand US Dollars ($100,000.00), together with interest accruing on the unpaid balance thereof until due. The interest rate on this Note shall be an annual rate of interest equal to nineteen (19%) percent.  Interest shall be computed on the basis of a year of 365 days and the actual number of days elapsed.

### 2.     INTEREST PAYMENTS.

The Borrower will pay said interest to the Payee in equal installment payments of $1,583.33, on the first day of each month. Payments shall be to the Payee's address as designated above. Acceptance by the Payee of any payment differing from the designated payment listed above does not relieve the Borrower of the obligation to honor the requirements of this Note. Late Payment: In the event any payment required hereby shall not be paid within Ten (10) days after the same shall be due and payable, a late charge equal to six percent (6%) of the delinquent amount shall be immediately due and payable.

### 3.     INITIAL DATE.

The first interest payment under this Note is due and payable on the first day of January, 2013. A like payment shall be due on the same day of each succeeding month thereafter.

### 4.     PREPAYMENT AND MUTUAL OPTION TO RENEW

The Borrower may prepay any part of the principal of this Note at any time before maturity without penalty or premium.  This Note can be renewed if both parties agree on an extension on a month to month basis.

## 5.   PAYMENT OF PRINCIPAL.

The entire outstanding principal balance, including any accrued interest, shall be due and payable in full on or before the 13th day of December, 2013.

## 6.   SECURITY FOR PAYMENT.

This Note is secured by and entitled to the benefits of security provisions.   The Security Provisions encumber the undersigned's ownership interest in the fleet, freezers and equipment and other assets of the Company (all assets) located at any of their facilities and their 100% ownership in the all real estate properties owned by Nasser Palizban in individual LLCs located in southern CA (Mira Mar, City of Industry, Vista, Carson and Riverside).

## 7.   EVENTS OF DEFAULT.

The Borrower will be deemed to be in default under this Note on the occurrence of any of the following events (each an "Event of Default"): (i) on the Borrower's failure to make any payment when due under this Note, which failure continues for a period of more than ten (10) days after such due date; (ii) on the filing regarding the Borrower of any voluntary or involuntary petition for relief under the United States Bankruptcy Code or the initiation of any proceeding under federal law or law of any other jurisdiction for the general relief of debtors; or (iii) on the execution by the Borrower of an assignment for the benefit of creditors or the appointment of a receiver, custodian, trustee, or similar party to take possession of the Borrower's assets or property.

## 8.   ACCELERATION; REMEDIES ON DEFAULT.

On the occurrence of any Event of Default, at the option of the Payee, all principal and other amounts owed under this Note shall become immediately due and payable without notice or demand by the Payee, and the Payee, in addition to its rights and remedies under this Note, may pursue any legal or equitable remedies that are available to it.

## 9.   WAIVER OF PRESENTMENT; DEMAND.

The Borrower hereby waives presentment, demand, notice of dishonor, notice of default or delinquency, notice of protest and nonpayment, notice of costs, expenses, or losses and interest thereon, notice of interest on interest and late charges, and diligence in taking any action to collect any sums owing under this Note, including (to the extent permitted by law) waiving the pleading of any statute of limitations as a defense to any demand against the undersigned, or in proceeding against any of the rights or interests in or to properties securing payment of this Note.

10.     **TIME OF ESSENCE.**

Time is of the essence with respect to every provision of this Note.

11.     **SUCCESSORS AND ASSIGNS.**

All references in this Note to the Borrower and the Payee shall be deemed to include, as applicable, a reference to their respective successors and assigns. The provisions of this Note shall be binding upon and shall inure to the benefit of the successors and assigns of the Borrower and the Payee.

12.     **NOTICE.**

Any notice or other communication provided for herein or given hereunder to a party hereto shall be in writing and shall be given in person, by overnight courier, or by mail (registered or certified mail, postage prepaid, return receipt requested) to the respective party as follows:

    If to the Payee:

    Jalali Family Trust dated 08-31-2005
    15 Charity
    Irvine, CA 92612

    If to the Borrower:

    Quality Discount Ice Cream Distributors, Inc.
    Nasser Palizban, President
    450 S. Melrose Drive, Suite 110
    Vista, CA 92081

13.     **GOVERNING LAW.**

This Note shall be governed as to validity, interpretation, construction, effect, and in all other respects by the laws and decisions of the State of California, without regards to its conflict-of-law provisions. The Borrower hereby irrevocably consents to the jurisdiction of the courts of San Diego County, California with respect to any matter arising under this Note, and further irrevocably consents to service of process by hand delivery to the address listed above for the Borrower.

14.     **ENTIRE AGREEMENT.**

This Note constitutes the final, complete, and exclusive statement of the agreement of the parties with respect to the subject matter hereof, and supersedes any and all other prior and contemporaneous agreements and understandings, both written and oral, between the parties.

### 15. NO IMPLIED WAIVER.

The Payee's failure to exercise any right or remedy provided in this Note shall not be construed as a waiver of any future exercise of that right or exercise of any other right or remedy to which the Payee may be entitled.

### 16. COLLECTION COSTS AND ATTORNEYS' FEES.

The Borrower agrees to pay any and all costs incurred by the Payee in collecting sums payable under this Note, including reasonable attorneys' fees and court costs in addition to other amounts due, without protest of any kind.

### 17. SEVERABILITY.

If one or more of the provisions of this Note shall be declared or held to be invalid, illegal, or unenforceable in any respect in any jurisdiction, the validity, legality, and enforceability of the remaining provisions hereof shall not in any way be affected or impaired thereby and any such declaration or holding shall not invalidate or render unenforceable such provision in any other jurisdiction.

### 18. HEADINGS.

Headings used in this Note are provided for convenience only and shall not be used to construe meaning or intent.

**IN WITNESS WHEREOF**, the parties have executed this Note as of the date first above written.

**BORROWER**   Quality Discount Ice Cream Distributors, Inc.

By: _____

Name: Nasser Palizban
Title: President

See attached California
All-Purpose Acknowledgment

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

State of California

County of ___San Diego___

On _Dec. 13th, 2012_ before me, ___P. U. Parikh - Notary Public___,
(Here insert name and title of the officer)

personally appeared ___Nasser Palizban___,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public

(Notary Seal)

**OFFICIAL SEAL**
P. U. PARIKH
NOTARY PUBLIC-CALIFORNIA
COMM. NO. 1847353
SAN DIEGO COUNTY
MY COMM. EXP. MAY 2, 2013

---

## ADDITIONAL OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

___Promissory Note___
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _4_   Document Date _12/14/12_

_____
(Additional information)

### CAPACITY CLAIMED BY THE SIGNER

☒ Individual (s)
☒ Corporate Officer
___President___
(Title)
☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other _____

### INSTRUCTIONS FOR COMPLETING THIS FORM

*Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they, is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover any of lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document

2008 Version CAPA v12.10.07 800-873-9865  www.NotaryClasses.com

# EXHIBIT D

## PROMISSORY NOTE
## (INTEREST-ONLY WITH BALLOON FINAL PAYMENT)

### **$100,000** Amount of Note

This promissory note (the "Note") is made and effective 14th day of December, 2012, by and between Quality Discount Ice Cream Distributors, Inc. and Nasser Palizban, an individual and President of Quality Discount Ice Cream Distributors, Inc., jointly and severally as the ("Borrower"), and , Jalali Family Trust (the "Lender" and together with the Borrower, the "Parties").

### 1.    PROMISE OF PAYMENT.

FOR VALUE RECEIVED, the Borrower promises to pay to the Payee, at 7265 Park Village Road , San Diego, CA 92129, or at such other place as the Payee may designate in writing from time to time, the principal amount of One hundred thousand US Dollars ($100,000.00), together with interest accruing on the unpaid balance thereof until due. The interest rate on this Note shall be an annual rate of interest equal to nineteen (19%) percent. Interest shall be computed on the basis of a year of 365 days and the actual number of days elapsed.

### 2.    INTEREST PAYMENTS.

The Borrower will pay said interest to the Payee in equal installment payments of $1,583.33, on the first day of each month. Payments shall be to the Payee's address as designated above. Acceptance by the Payee of any payment differing from the designated payment listed above does not relieve the Borrower of the obligation to honor the requirements of this Note. Late Payment: In the event any payment required hereby shall not be paid within Ten (10) days after the same shall be due and payable, a late charge equal to six percent (6%) of the delinquent amount shall be immediately due and payable.

### 3.    INITIAL DATE.

The first interest payment under this Note is due and payable on the first day of Jan, 2013. A like payment shall be due on the same day of each succeeding month thereafter.

### 4.    PREPAYMENT AND MUTUAL OPTION TO RENEW

The Borrower may prepay any part of the principal of this Note at any time before maturity without penalty or premium. This Note can be renewed if both parties agree on an extension on a month to month basis.

## 5.    PAYMENT OF PRINCIPAL.

The entire outstanding principal balance, including any accrued interest, shall be due and payable in full on or before the 13th day of December, 2013.

## 6.    SECURITY FOR PAYMENT.

This Note is secured by and entitled to the benefits of security provisions. The Security Provisions encumber the undersigned's ownership interest in the fleet, freezers and equipment and other assets of the Company (all assets) located at any of their facilities and their 100% ownership in the all real estate properties owned by Nasser Palizban in individual LLCs located in southern CA (Mira Mar, City of Industry, Vista, Carson and Riverside).

## 7.    EVENTS OF DEFAULT.

The Borrower will be deemed to be in default under this Note on the occurrence of any of the following events (each an "Event of Default"): (i) on the Borrower's failure to make any payment when due under this Note, which failure continues for a period of more than ten (10) days after such due date; (ii) on the filing regarding the Borrower of any voluntary or involuntary petition for relief under the United States Bankruptcy Code or the initiation of any proceeding under federal law or law of any other jurisdiction for the general relief of debtors; or (iii) on the execution by the Borrower of an assignment for the benefit of creditors or the appointment of a receiver, custodian, trustee, or similar party to take possession of the Borrower's assets or property.

## 8.    ACCELERATION; REMEDIES ON DEFAULT.

On the occurrence of any Event of Default, at the option of the Payee, all principal and other amounts owed under this Note shall become immediately due and payable without notice or demand by the Payee, and the Payee, in addition to its rights and remedies under this Note, may pursue any legal or equitable remedies that are available to it.

## 9.    WAIVER OF PRESENTMENT; DEMAND.

The Borrower hereby waives presentment, demand, notice of dishonor, notice of default or delinquency, notice of protest and nonpayment, notice of costs, expenses, or losses and interest thereon, notice of interest on interest and late charges, and diligence in taking any action to collect any sums owing under this Note, including (to the extent permitted by law) waiving the pleading of any statute of limitations as a defense to any demand against the undersigned, or in proceeding against any of the rights or interests in or to properties securing payment of this Note.

## 10.    TIME OF ESSENCE.

Time is of the essence with respect to every provision of this Note.

## 11.    SUCCESSORS AND ASSIGNS.

All references in this Note to the Borrower and the Payee shall be deemed to include, as applicable, a reference to their respective successors and assigns. The provisions of this Note shall be binding upon and shall inure to the benefit of the successors and assigns of the Borrower and the Payee.

## 12.    NOTICE.

Any notice or other communication provided for herein or given hereunder to a party hereto shall be in writing and shall be given in person, by overnight courier, or by mail (registered or certified mail, postage prepaid, return receipt requested) to the respective party as follows:

    If to the Payee:

    Jalali Family Trust
    7265 Park Village Road
    San Diego, CA 92129

    If to the Borrower:

    Quality Discount Ice Cream Distributors, Inc.
    Nasser Palizban, President
    450 S. Melrose Drive, Suite 110
    Vista, CA 92081

## 13.    GOVERNING LAW.

This Note shall be governed as to validity, interpretation, construction, effect, and in all other respects by the laws and decisions of the State of California, without regards to its conflict-of-law provisions. The Borrower hereby irrevocably consents to the jurisdiction of the courts of San Diego County, California with respect to any matter arising under this Note, and further irrevocably consents to service of process by hand delivery to the address listed above for the Borrower.

## 14.    ENTIRE AGREEMENT.

This Note constitutes the final, complete, and exclusive statement of the agreement of the parties with respect to the subject matter hereof, and supersedes any and all other prior and contemporaneous agreements and understandings, both written and oral, between the parties.

### 15.    NO IMPLIED WAIVER.

The Payee's failure to exercise any right or remedy provided in this Note shall not be construed as a waiver of any future exercise of that right or exercise of any other right or remedy to which the Payee may be entitled.

### 16.    COLLECTION COSTS AND ATTORNEYS' FEES.

The Borrower agrees to pay any and all costs incurred by the Payee in collecting sums payable under this Note, including reasonable attorneys' fees and court costs in addition to other amounts due, without protest of any kind.

### 17.    SEVERABILITY.

If one or more of the provisions of this Note shall be declared or held to be invalid, illegal, or unenforceable in any respect in any jurisdiction, the validity, legality, and enforceability of the remaining provisions hereof shall not in any way be affected or impaired thereby and any such declaration or holding shall not invalidate or render unenforceable such provision in any other jurisdiction.

### 18.    HEADINGS.

Headings used in this Note are provided for convenience only and shall not be used to construe meaning or intent.

**IN WITNESS WHEREOF**, the parties have executed this Note as of the date first above written.

**BORROWER**    Quality Discount Ice Cream Distributors, Inc.

By: _____
Name: Nasser Palizban
Title: President

See attached California
All-Purpose Acknowledgment

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

State of California

County of _San Diego_

On _Dec. 8th, 2012_ before me, _P. U. Parikh - Notary Public_,
(Here insert name and title of the officer)

personally appeared _Nasser Palizban_,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Parikh_ _____
Signature of Notary Public          (Notary Seal)

OFFICIAL SEAL
P. U. PARIKH
NOTARY PUBLIC-CALIFORNIA
COMM. NO. 1847353
SAN DIEGO COUNTY
MY COMM. EXP. MAY 2, 2013

---

## ADDITIONAL OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

_Promissory Note_
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _4_ Document Date _12/14/12_

_____
(Additional information)

### CAPACITY CLAIMED BY THE SIGNER

☑ Individual (s)
☑ Corporate Officer
   _President_
   (Title)
☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other _____

### INSTRUCTIONS FOR COMPLETING THIS FORM

*Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they,- is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document

2008 Version CAPA v12.10.07 800-873-9865  www.NotaryClasses.com

# EXHIBIT E

# 3

# PROMISSORY NOTE
## (INTEREST-ONLY WITH BALLOON FINAL PAYMENT)

**$100,000** Amount of Note

This promissory note (the "Note") is made and effective <u>20th day of December, 2013</u>, by and between Quality Discount Ice Cream Distributors, Inc. and Nasser Palizban, an individual and President of Quality Discount Ice Cream Distributors, Inc., jointly and severally as the ("Borrower"), and , Jalali Family Trust (the "Lender" and together with the Borrower, the "Parties").


**1.    PROMISE OF PAYMENT.**

FOR VALUE RECEIVED, the Borrower promises to pay to the Payee, at 7265 Park Village Road , San Diego, CA 92129, or at such other place as the Payee may designate in writing from time to time, the principal amount of One hundred thousand US Dollars ($100,000.00), together with interest accruing on the unpaid balance thereof until due. The interest rate on this Note shall be an annual rate of interest equal to nineteen (19%) percent.  Interest shall be computed on the basis of a year of 365 days and the actual number of days elapsed.


**2.    INTEREST PAYMENTS.**

The Borrower will pay said interest to the Payee in equal installment payments of $1,583.33, on the first day of each month. Payments shall be to the Payee's address as designated above. Acceptance by the Payee of any payment differing from the designated payment listed above does not relieve the Borrower of the obligation to honor the requirements of this Note. <u>Late Payment:</u> In the event any payment required hereby shall not be paid within Ten (10) days after the same shall be due and payable, a late charge equal to six percent (6%) of the delinquent amount shall be immediately due and payable.


**3.    INITIAL DATE.**

The first interest payment under this Note is due and payable on the first day of Jan, 2014. A like payment shall be due on the same day of each succeeding month thereafter.


**4.    PREPAYMENT AND MUTUAL OPTION TO RENEW**

The Borrower may prepay any part of the principal of this Note at any time before maturity without penalty or premium.  This Note can be renewed if both parties agree on an extension on a month to month basis.

5.    **PAYMENT OF PRINCIPAL.**

The entire outstanding principal balance, including any accrued interest, shall be due and payable in full on or before the 19th day of December, 2014.

6.    **SECURITY FOR PAYMENT.**

This Note is secured by and entitled to the benefits of security provisions.  The Security Provisions encumber the undersigned's ownership interest in the fleet, freezers and equipment and other assets of the Company (all assets) located at any of their facilities and their 100% ownership in the all real estate properties owned by Nasser Palizban in individual LLCs located in southern CA (Mira Mar, City of Industry, Vista, Carson and Riverside).

7.    **EVENTS OF DEFAULT.**

The Borrower will be deemed to be in default under this Note on the occurrence of any of the following events (each an "Event of Default"): (i) on the Borrower's failure to make any payment when due under this Note, which failure continues for a period of more than ten (10) days after such due date; (ii) on the filing regarding the Borrower of any voluntary or involuntary petition for relief under the United States Bankruptcy Code or the initiation of any proceeding under federal law or law of any other jurisdiction for the general relief of debtors; or (iii) on the execution by the Borrower of an assignment for the benefit of creditors or the appointment of a receiver, custodian, trustee, or similar party to take possession of the Borrower's assets or property.

8.    **ACCELERATION; REMEDIES ON DEFAULT.**

On the occurrence of any Event of Default, at the option of the Payee, all principal and other amounts owed under this Note shall become immediately due and payable without notice or demand by the Payee, and the Payee, in addition to its rights and remedies under this Note, may pursue any legal or equitable remedies that are available to it.

9.    **WAIVER OF PRESENTMENT; DEMAND.**

The Borrower hereby waives presentment, demand, notice of dishonor, notice of default or delinquency, notice of protest and nonpayment, notice of costs, expenses, or losses and interest thereon, notice of interest on interest and late charges, and diligence in taking any action to collect any sums owing under this Note, including (to the extent permitted by law) waiving the pleading of any statute of limitations as a defense to any demand against the undersigned, or in proceeding against any of the rights or interests in or to properties securing payment of this Note.

10.    **TIME OF ESSENCE.**

Time is of the essence with respect to every provision of this Note.

11.    **SUCCESSORS AND ASSIGNS.**

All references in this Note to the Borrower and the Payee shall be deemed to include, as applicable, a reference to their respective successors and assigns. The provisions of this Note shall be binding upon and shall inure to the benefit of the successors and assigns of the Borrower and the Payee.

12.    **NOTICE.**

Any notice or other communication provided for herein or given hereunder to a party hereto shall be in writing and shall be given in person, by overnight courier, or by mail (registered or certified mail, postage prepaid, return receipt requested) to the respective party as follows:

    If to the Payee:

    Jalali Family Trust
    7265 Park Village Road
    San Diego, CA 92129

    If to the Borrower:

    Quality Discount Ice Cream Distributors, Inc.
    Nasser Palizban, President
    450 S. Melrose Drive, Suite 110
    Vista, CA 92081

13.    **GOVERNING LAW.**

This Note shall be governed as to validity, interpretation, construction, effect, and in all other respects by the laws and decisions of the State of California, without regards to its conflict-of-law provisions. The Borrower hereby irrevocably consents to the jurisdiction of the courts of San Diego County, California with respect to any matter arising under this Note, and further irrevocably consents to service of process by hand delivery to the address listed above for the Borrower.

14.    **ENTIRE AGREEMENT.**

This Note constitutes the final, complete, and exclusive statement of the agreement of the parties with respect to the subject matter hereof, and supersedes any and all other prior and contemporaneous agreements and understandings, both written and oral, between the parties.

### 15.    NO IMPLIED WAIVER.

The Payee's failure to exercise any right or remedy provided in this Note shall not be construed as a waiver of any future exercise of that right or exercise of any other right or remedy to which the Payee may be entitled.

### 16.    COLLECTION COSTS AND ATTORNEYS' FEES.

The Borrower agrees to pay any and all costs incurred by the Payee in collecting sums payable under this Note, including reasonable attorneys' fees and court costs in addition to other amounts due, without protest of any kind.

### 17.    SEVERABILITY.

If one or more of the provisions of this Note shall be declared or held to be invalid, illegal, or unenforceable in any respect in any jurisdiction, the validity, legality, and enforceability of the remaining provisions hereof shall not in any way be affected or impaired thereby and any such declaration or holding shall not invalidate or render unenforceable such provision in any other jurisdiction.

### 18.    HEADINGS.

Headings used in this Note are provided for convenience only and shall not be used to construe meaning or intent.

**IN WITNESS WHEREOF**, the parties have executed this Note as of the date first above written.

**BORROWER**    Quality Discount Ice Cream Distributors, Inc.

See attached California
All-Purpose Acknowledgment

By: _____
Name: Nasser Palizban
Title: President

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

State of California

County of _San Diego_

On _12|9|13_ before me, co Carmen Donahue, Notary Public
_Nasser Palizban_
<span style="font-size:smaller">(Here insert name and title of the officer)</span>

personally appeared _Nasser Palizban_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Carmen Donahue_
Signature of Notary Public

(Notary Seal)

```
OFFICIAL SEAL
CARMEN DONAHUE
NOTARY PUBLIC-CALIFORNIA
COMM. NO. 2044622
SAN DIEGO COUNTY
MY COMM. EXP. OCT. 7, 2017
```

---

## ADDITIONAL OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _4_ Document Date _12|9|13_

_____
(Additional information)

### CAPACITY CLAIMED BY THE SIGNER
- ☐ Individual (s)
- ☐ Corporate Officer

   _____
   (Title)
- ☐ Partner(s)
- ☐ Attorney-in-Fact
- ☐ Trustee(s)
- ☐ Other _____

### INSTRUCTIONS FOR COMPLETING THIS FORM

*Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they,- is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
    - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
    - ❖ Indicate title or type of attached document, number of pages and date.
    - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document

2008 Version CAPA v12.10.07 800-873-9865 www.NotaryClasses.com

# EXHIBIT F

# PROMISSORY NOTE
## (INTEREST-ONLY WITH BALLOON FINAL PAYMENT)

### $200,000 Amount of Note

This promissory note (the "Note") is made and effective 20th day of December, 2013, by and between Quality Discount Ice Cream Distributors, Inc. and Nasser Palizban, an individual and President of Quality Discount Ice Cream Distributors, Inc., jointly and severally as the ("Borrower"), and , Jalali Family Trust dated 08-31-2005 (the "Lender" and together with the Borrower, the "Parties").

1.    **PROMISE OF PAYMENT.**

FOR VALUE RECEIVED, the Borrower promises to pay to the Payee, at 15 Charity, Irvine, CA 92612, or at such other place as the Payee may designate in writing from time to time, the principal amount of Two hundred thousand US Dollars ($200,000.00), together with interest accruing on the unpaid balance thereof until due. The interest rate on this Note shall be an annual rate of interest equal to nineteen (19%) percent. Interest shall be computed on the basis of a year of 365 days and the actual number of days elapsed.

2.    **INTEREST PAYMENTS.**

The Borrower will pay said interest to the Payee in equal installment payments of $3,166.67, on the first day of each month. Payments shall be to the Payee's address as designated above. Acceptance by the Payee of any payment differing from the designated payment listed above does not relieve the Borrower of the obligation to honor the requirements of this Note. Late Payment: In the event any payment required hereby shall not be paid within Ten (10) days after the same shall be due and payable, a late charge equal to six percent (6%) of the delinquent amount shall be immediately due and payable.

3.    **INITIAL DATE.**

The first interest payment under this Note is due and payable on the first day of January, 2014. A like payment shall be due on the same day of each succeeding month thereafter.

4.    **PREPAYMENT AND MUTUAL OPTION TO RENEW**

The Borrower may prepay any part of the principal of this Note at any time before maturity without penalty or premium. This Note can be renewed if both parties agree on an extension on a month to month basis.

## 5.    PAYMENT OF PRINCIPAL.

The entire outstanding principal balance, including any accrued interest, shall be due and payable in full on or before the 19th day of December, 2014.

## 6.    SECURITY FOR PAYMENT.

This Note is secured by and entitled to the benefits of security provisions.   The Security Provisions encumber the undersigned's ownership interest in the fleet, freezers and equipment and other assets of the Company (all assets) located at any of their facilities and their 100% ownership in the all real estate properties owned by Nasser Palizban in individual LLCs located in southern CA (Mira Mar, City of Industry, Vista, Carson and Riverside).

## 7.    EVENTS OF DEFAULT.

The Borrower will be deemed to be in default under this Note on the occurrence of any of the following events (each an "Event of Default"): (i) on the Borrower's failure to make any payment when due under this Note, which failure continues for a period of more than ten (10) days after such due date; (ii) on the filing regarding the Borrower of any voluntary or involuntary petition for relief under the United States Bankruptcy Code or the initiation of any proceeding under federal law or law of any other jurisdiction for the general relief of debtors; or (iii) on the execution by the Borrower of an assignment for the benefit of creditors or the appointment of a receiver, custodian, trustee, or similar party to take possession of the Borrower's assets or property.

## 8.    ACCELERATION; REMEDIES ON DEFAULT.

On the occurrence of any Event of Default, at the option of the Payee, all principal and other amounts owed under this Note shall become immediately due and payable without notice or demand by the Payee, and the Payee, in addition to its rights and remedies under this Note, may pursue any legal or equitable remedies that are available to it.

## 9.    WAIVER OF PRESENTMENT; DEMAND.

The Borrower hereby waives presentment, demand, notice of dishonor, notice of default or delinquency, notice of protest and nonpayment, notice of costs, expenses, or losses and interest thereon, notice of interest on interest and late charges, and diligence in taking any action to collect any sums owing under this Note, including (to the extent permitted by law) waiving the pleading of any statute of limitations as a defense to any demand against the undersigned, or in proceeding against any of the rights or interests in or to properties securing payment of this Note.

### 10.    TIME OF ESSENCE.

Time is of the essence with respect to every provision of this Note.

### 11.    SUCCESSORS AND ASSIGNS.

All references in this Note to the Borrower and the Payee shall be deemed to include, as applicable, a reference to their respective successors and assigns. The provisions of this Note shall be binding upon and shall inure to the benefit of the successors and assigns of the Borrower and the Payee.

### 12.    NOTICE.

Any notice or other communication provided for herein or given hereunder to a party hereto shall be in writing and shall be given in person, by overnight courier, or by mail (registered or certified mail, postage prepaid, return receipt requested) to the respective party as follows:

> If to the Payee:
>
> Jalali Family Trust dated 08-31-2005
> 15 Charity
> Irvine, CA 92612
>
> If to the Borrower:
>
> Quality Discount Ice Cream Distributors, Inc.
> Nasser Palizban, President
> 450 S. Melrose Drive, Suite 110
> Vista, CA 92081

### 13.    GOVERNING LAW.

This Note shall be governed as to validity, interpretation, construction, effect, and in all other respects by the laws and decisions of the State of California, without regards to its conflict-of-law provisions. The Borrower hereby irrevocably consents to the jurisdiction of the courts of San Diego County, California with respect to any matter arising under this Note, and further irrevocably consents to service of process by hand delivery to the address listed above for the Borrower.

### 14.    ENTIRE AGREEMENT.

This Note constitutes the final, complete, and exclusive statement of the agreement of the parties with respect to the subject matter hereof, and supersedes any and all other prior and contemporaneous agreements and understandings, both written and oral, between the parties.

### 15. NO IMPLIED WAIVER.

The Payee's failure to exercise any right or remedy provided in this Note shall not be construed as a waiver of any future exercise of that right or exercise of any other right or remedy to which the Payee may be entitled.

### 16. COLLECTION COSTS AND ATTORNEYS' FEES.

The Borrower agrees to pay any and all costs incurred by the Payee in collecting sums payable under this Note, including reasonable attorneys' fees and court costs in addition to other amounts due, without protest of any kind.

### 17. SEVERABILITY.

If one or more of the provisions of this Note shall be declared or held to be invalid, illegal, or unenforceable in any respect in any jurisdiction, the validity, legality, and enforceability of the remaining provisions hereof shall not in any way be affected or impaired thereby and any such declaration or holding shall not invalidate or render unenforceable such provision in any other jurisdiction.

### 18. HEADINGS.

Headings used in this Note are provided for convenience only and shall not be used to construe meaning or intent.

**IN WITNESS WHEREOF**, the parties have executed this Note as of the date first above written.

**BORROWER**    Quality Discount Ice Cream Distributors, Inc.

By: _____
Name: Nasser Palizban
Title: President

See attached California
All-Purpose Acknowledgment

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

State of California

County of San Diego

On 12/19/13 _____ before me, Carmen Donahue, Notary Public _____,
<span style="font-size:smaller">(Here insert name and title of the officer)</span>

personally appeared Nasser Palizban _____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public        (Notary Seal)

```
OFFICIAL SEAL
CARMEN DONAHUE
NOTARY PUBLIC-CALIFORNIA
COMM. NO. 2044622
SAN DIEGO COUNTY
MY COMM. EXP. OCT. 7, 2017
```

---

## ADDITIONAL OPTIONAL INFORMATION

### INSTRUCTIONS FOR COMPLETING THIS FORM

*Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.*

---

**DESCRIPTION OF THE ATTACHED DOCUMENT**

Promissory Note
<span style="font-size:smaller">(Title or description of attached document)</span>

_____
<span style="font-size:smaller">(Title or description of attached document continued)</span>

Number of Pages 4   Document Date 12/19/13

_____
<span style="font-size:smaller">(Additional information)</span>

---

**CAPACITY CLAIMED BY THE SIGNER**
- ☐ Individual (s)
- ☐ Corporate Officer

  _____
  <span style="font-size:smaller">(Title)</span>
- ☐ Partner(s)
- ☐ Attorney-in-Fact
- ☐ Trustee(s)
- ☐ Other _____

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they, is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document

2008 Version CAPA v12.10.07 800-873-9865 www.NotaryClasses.com

**EXHIBIT G**



This page is part of your document - DO NOT DISCARD



## 20151041259





Pages:
0012

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**08/24/15 AT 02:55PM**

| | |
|---|---|
| FEES: | 109.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 109.00 |



**LEADSHEET**



201508243290040

00011043071



007040470

**SEQ:**
**01**

DAR - Counter (Upfront Scan)



**THIS FORM IS NOT TO BE DUPLICATED**

E441953

REQUESTED BY

RECORDED MAIL TO

NAME    BIJAN JALALI

MAILING    765 Kendall DR

CITY, STATE, ZIP CODE
LAGUNA Beach, CA 92651

08/24/2015

*20151041259*

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

## TITLE

DEED OF TRUST

DOC# 2015-0429208

Aug 13, 2015  09:55 AM
OFFICIAL RECORDS
Ernest J. Dronenburg, Jr.,
SAN DIEGO COUNTY RECORDER
FEES:    $87.00
PCOR: N/A
PAGES: 9

RECORDING REQUESTED BY:
Jalali Family Trust dated 08-31-2005 and Jalali
Family Trust (two separate trusts)

AND WHEN RECORDED MAIL TO:

Bahman and Bijan Jalali
7265 Park Village Road
San Diego, CA 92129

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, AND SECURITY AGREEMENT

This DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, AND SECURITY AGREEMENT ("**Deed of Trust**"), is made as of June 30 ,2015, by and among KAMRON EVERGREEN, LLC, a California limited liability company and PLE MANAGEMENT, LLC, a California limited liability company whose address is 450 S. Melrose Drive, Suite 110, Vista, CA 92081 Jointly and severally as ("Trustor"); CHICAGO TITLE COMPANY ("**Trustee**"), and Jalali Family Trust dated 08-31-2005 and Jalali Family Trust (two separate trusts) 7265 Park Village Road San Diego, CA 92129 Jointly and severally as ("**Beneficiary**").

1.     **Grants; Obligations Secured.**

    **1.1**     **Real Property.**   Trustor irrevocably GRANTS, TRANSFERS AND ASSIGNS to Trustee, its successors and assigns, in trust, with power of sale and right of entry and possession, all of Trustor's present and future estate, right, title and interest in and to all of the following property, now owned or hereafter acquired (collectively the "**Property**"):

    (a) that certain real property located in the City of Vista and Industry, State of California, described as set forth on **Exhibit "A"** attached hereto and incorporated by this reference (the "**Real Property**"), (b) all present and future appurtenances to the Real Property, (c) all improvements and fixtures on the Real Property, and (d) all present and future leases, licenses, franchises, concessions, subleases, rental agreements and other agreements for possession, use or occupancy pertaining to any of the Real Property and all guarantees of, security for, and letters of credit and other credit enhancements given in connection with any person's obligations under any thereof, and all of the rents, issues, royalties, profits, receipts, revenue and income (including security deposits) of any thereof or any of the Property (collectively the "**Rents**") (subject, however, to the absolute assignment thereof set forth hereinafter and the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply the Rents).

    **1.2**     **Obligations Secured.** The grants, assignments and transfers made in **Section 1.1** secure, in such order of priority as Beneficiary, in its absolute discretion, may determine, the due, prompt and complete payment, performance, observance and satisfaction by Trustor of all of its obligations, covenants, agreements and conditions under all of the following (collectively, the "**Obligations**"): (a) Four Promissory Notes Dated May 17, 2012 and Dec 14, 2012, made by Nasser Palizban ("Borrower") in favor of Beneficiary (collectively, the "**Secured Document**"), securing loans in the aggregate amount of Six Hundred and One Thousand Dollars ($601,000.00), (b) this Deed of Trust, including all additional advances made by Beneficiary under this Deed of Trust, (c) all other agreements to which Trustor (or the

1

then owner of the Property) and Beneficiary may now or hereafter be or become parties which state that Trustor's (or such owner's) obligations under such agreements are secured by this Deed of Trust, and (d) all extensions, modifications, substitutions, replacements and renewals of any of the foregoing.

     **1.3**    **Release of Property.** Trustor may obtain the release of the Real Property by payment of the then current outstanding amount of the Obligations, in which case this Deed of Trust shall be immediately released and reconveyed.

**2.**     To protect the security of this Deed of Trust, Trustor represents, warrants and agrees as follows:

     **2.1**    **Repair; Compliance with Laws.** Trustor shall keep the Property in good condition and repair, not remove or demolish any improvements or fixtures thereon; complete or restore promptly and in good and workmanlike manner any improvement or fixture which may be constructed, damaged or destroyed thereon and pay when due all claims for labor performed and materials furnished therefor, comply with all laws affecting the Property or requiring any alterations or improvements to be made thereon, not commit or permit waste thereof; not commit, suffer or permit any act upon the Property in violation of law; cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of the Property may be reasonably necessary.

     **2.2**    **Defense Obligations; Reimbursement.** Trustor shall appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee. Trustor shall immediately reimburse Beneficiary for all fees and costs, including attorneys' and experts' fees and costs, incurred by Beneficiary for: (a) enforcement of any of the Obligations, this Deed of Trust or any of its terms, or the exercise of any rights or remedies hereunder and/or at law, in equity or otherwise, whether or not any action or proceeding is filed; (b) representation of Beneficiary in any bankruptcy, insolvency, reorganization or other debtor-relief or similar proceeding of or relating to Trustor, to any person liable (by way of co-obligation, guaranty, assumption, endorsement or otherwise) upon or in connection with any of the Obligations, or to the Property; or (c) representation of Beneficiary in any action or proceeding relating to the Property, whether commenced by Beneficiary or any other person, including foreclosure, receivership, lien or stop-notice enforcement, bankruptcy, eminent domain and probate actions or proceedings.

     **2.3**    **Taxes and Assessments.** Trustor shall pay, at least ten days before delinquency, all taxes and assessments affecting the Property, including assessments on appurtenant water stock and, when due, all encumbrances, charges and liens, with interest, on the Property, or any part thereof, which appear to be prior, superior or junior hereto, and all costs, fees and expenses of this Deed of Trust.

     **2.4**    **Protection of Security.** Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon the Property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

     **2.5**    **Payment.** Trustor shall pay immediately and without demand all sums expended by Beneficiary or Trustee pursuant to Section 2.4, with interest from the date of expenditure at the rate of five percent (5%) per annum, and to pay for any statement provided for by law in effect at the date hereof

2

regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

### 2.6    Security Interest Information.

2.6.1    **Representations and Warranties.**    Trustor represents and warrants to Beneficiary that: (a) Trustor's full, correct and legal name is as shown in the first paragraph of this Deed of Trust; (b) the Secured Obligations are incurred by Trustor for business, commercial and/or investment purposes, and not primarily for personal, family, or household purposes; and (c) the transaction that is the subject of the Secured Document is not a consumer-goods transaction or a consumer transaction.

2.6.2    **Changes in Name or State of Organization.**    Trustor will make no change to its name or address without providing Beneficiary thirty (30) days' prior written notice.

**2.7    Indemnity.**    Trustor will indemnify, defend, and hold Beneficiary harmless from and against all liabilities, claims, actions, costs, and expenses, including attorneys' fees, arising from or related to Trustor's ownership or use of any of the Property, or Beneficiary's exercise of any of its rights or remedies under this Deed of Trust.

**2.8    Further Agreements, Acts.**    Trustor shall execute any and all further agreements, assignments, documents and financing statements, and take such other further acts, as Beneficiary may reasonably request from time to time in order to evidence, protect, perfect or continue the security interest of Beneficiary in the Property or otherwise carry out the purposes and intent of this Deed of Trust.

**3.**    It is further agreed:

**3.1    Other Trustee Rights.**    At any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed of Trust and the Secured Document (to the extent legally required) for endorsement, and without affecting the personal liability of any person for payment of the Obligations, Trustee may: reconvey any part of the Property; consent to the making of any map or plat thereof; join in granting any easement thereon, or join in any extension agreement or any agreement subordinating the lien or charge hereof.

**3.2    Reconveyance.**    Upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed of Trust and the Secured Document (to the extent legally required) to Trustee for cancellation and retention or other disposition as Trustee in its sole discretion may choose and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

### 3.3    Leases and Rents.

3.3.1    Trustor absolutely and unconditionally hereby ASSIGNS and TRANSFERS to Beneficiary all of the Rents; reserving to Trustor only the right, prior to any Default hereunder (which right shall terminate immediately and automatically upon any such Default, without notice), to collect, receive and retain the Rents as and when (and not before) they become due and payable, but not otherwise. Trustor shall, at the request of Beneficiary, execute such further assignments to Beneficiary of the Rents as Beneficiary may require.

3

3.3.2    Upon any Default hereunder (as defined below), Beneficiary may, at any time and without notice, irrespective of whether a notice of default has been delivered to Trustee, and without regard to the adequacy of the security for the Obligations, in person or by agent or representative with or without bringing any action or proceeding, or by a receiver appointed by a court, do any one or more of the following, in its own name or in the name of Trustor:  (a) enter upon, take possession of and/or operate the Property, or any part thereof; (b) sue for or otherwise collect and receive Rents (including those past due and unpaid) and apply such Rents (less costs and expenses of operation (including reserves) and collection, including attorneys' and experts' fees and costs) to the payment of the Obligations in such order and in proportions as Beneficiary in its absolute discretion may determine; (c) dispossess by usual proceedings any lessee defaulting in the payment of Rents; (d) lease the Property or any part thereof; (e) do any other acts which Beneficiary deems proper to protect this assignment and its interests hereunder until all of the Obligations are paid in full; and (f) exercise any other right permitted by law.  The exercise of any of the foregoing rights shall not cure or waive any Default or notice of default hereunder or invalidate any act done pursuant to such notice, nor render Beneficiary a mortgagee in possession.

3.3.3    Trustor shall, at its sole cost and expense:  (a) timely perform and satisfy every obligation and condition of all existing and future leases of the Property (the "**Leases**") to be performed or satisfied by the lessor thereunder; (b) give prompt notice to Beneficiary of any notice of default given or received by Trustor under the Leases, together with a complete copy of any such notice of default; (c) enforce, short of termination, the performance and satisfaction of every obligation and condition of the Leases to be performed or satisfied by the lessees thereunder; (d) appear in and defend any action arising out of or relating to any of the Leases or the obligations of any party thereunder; and (e) furnish to Beneficiary true and correct copies of all Leases if requested in writing.

### 3.4    Default and Remedies.

3.4.1    **Default.**  It shall be a default under this Deed of Trust if any of the following occurs ("**Default**"): (a) a default by Trustor under the Secured Document which is not cured within ten (10) business days after written notice thereof to Trustor from Beneficiary; (b) default by any person liable (by way of co-obligation, guaranty, assumption, endorsement or otherwise), including but not limited to Borrower, upon or in connection with any of the Obligations under the Secured Document which is not cured within ten (10) business days after notice thereof from Beneficiary; or (c) Trustor, Borrower or any person liable (by way of co-obligation, guaranty, assumption, endorsement or otherwise) upon or in connection with any of the Obligations: (i) voluntarily suspends the transaction of business; (ii) becomes insolvent or unable to pay its debts as they mature; (iii) makes an assignment for the benefit of creditors; (iv) becomes the subject of a bankruptcy, reorganization or similar debtor-relief proceeding unless, in the case of an involuntary petition filed against Trustor or Borrower, as applicable, the petition is dismissed within sixty (60) days; (v) becomes, or any of its property becomes, the subject of appointment of a receiver, trustee, or conservator, unless, in the case of such appointment without Trustor's or Borrower's, as applicable, consent, the appointment is vacated within sixty (60) days; (vi) has any of its property become subject to any attachment, execution, sequestration or other judicial seizure not discharged within sixty (60) days; or (vii) fails to pay or discharge any judgment against it, singly or in the aggregate, in excess of $50,000.00, or to appeal such judgment(s) and obtain a stay thereof within ten (10) days of entry.

3.4.2    **Remedies.**  Upon the occurrence of a Default hereunder, Beneficiary may in addition to all of its other rights and remedies, all of which are cumulative, do any one or more of the following: (a) declare all sums secured hereby immediately due and payable; (b) enter on or into the Property, in person, by agent or by court appointed receiver, and take such action as Beneficiary may determine desirable to complete any unfinished development and/or to manage and operate the Property

and/or to collect Rents, and Beneficiary may apply any Rents collected against the Obligations without in any way curing or waiving any Default of Trustor; (c) foreclose, non-judicially and/or by judicial action, in any order, separately or together, at the same or different times and places, in one sale or any number of separate sales, with disclaimers of any or all warranties, against some or all of the Property, and/or any other real or personal property security for the Obligations, without waiving any other part thereof; (d) obtain the appointment of a receiver ex parte and without prior notice to Trustor, which notice Trustor hereby waives; (e) do any other acts which Beneficiary deems proper to protect this Deed of Trust and its interests hereunder until all of the Obligations are paid and performed in full; and (f) exercise any other legal, equitable or contractual right or remedy against Trustor and/or any security and/or any other person liable (by way of co-obligation, guaranty, assumption, endorsement or otherwise) upon the Obligations.

3.4.3    **Effect of Exercise of Remedies.**  No remedy provided or permitted under this Deed of Trust is exclusive of any other, or of any remedy provided or permitted by law, equity or any instrument or agreement evidencing, securing, guarantying or relating to any of the Obligations.  Each such remedy is cumulative and in addition to every other.  No exercise of remedies, including foreclosure, against any part of the Property shall exhaust or extinguish Beneficiary's rights to exercise remedies, including foreclosure, against any other part of the Property until the Obligations are paid in full.  A sale of less than all of the Property or any defective or irregular sale made under this Deed of Trust shall not exhaust or extinguish the power of sale provided for in this Deed of Trust or any right or power of sale provided by law, and subsequent sales may be made until the Obligations are paid in full, or the entire Property sold, without defect or irregularity.  Beneficiary may exercise any one or more of its remedies at its option without regard to the adequacy of its security.

3.4.4    **Sale(s) by Trustee of the Property.**

(a)    If Beneficiary elects to sell any of the Property under the power of sale herein granted, Trustee shall record and give all notices of default(s), election(s) to sell and sale(s) as may be required by law.  Upon the expiration of such time(s) as is required by law, Trustee shall, without demand on Trustor, sell all or such portions of the Property as Beneficiary may direct in its sole discretion upon any terms and conditions specified by Beneficiary and permitted by law, at the time and place (or the times and places) fixed in the notice(s) of sale(s) (subject to postponement as provided below), as a whole or in separate parcels or items, and in such order, and in one sale or any number of separate sales, all as Beneficiary may direct in its sole discretion, at public auction(s), to the highest bidder(s) for cash payable at the time of sale(s).  Trustor waives all rights (i) to require that the Property be sold together or separately, (ii) to direct the order in which any of the Property will be sold, and (iii) to have any of the Property marshalled upon any sale.  Trustee may postpone any sale from time to time by public announcement at the time and place of the sale as fixed by notice or by prior postponement, and may without further notice make such sale at the time fixed by the last postponement.

(b)    Any person, including Trustee or Beneficiary, may purchase at such sale. Trustee shall deliver to the purchaser a deed conveying the Property or portion thereof sold, but without any covenant or warranty, express or implied.  The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof.

(c)    Upon a sale by Trustee, and after deducting all costs, expenses, and fees of Trustee and of this trust (including the cost of evidence of title in connection with the sale), Trustee shall apply the proceeds from the sale to the payment of the Obligations in such order as Beneficiary may direct and the remainder, if any, to the person or persons legally entitled thereto.

3.5    **Successor Trustee.**  Beneficiary, or any successor in ownership of any of the Obligations, may from time to time, by instrument in writing, substitute a successor or successors to any

Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where the Property is situated shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the recordation information for this Deed of Trust, and the name and address of the new Trustee.

    **3.6**    <u>**Binding.**</u>  That this Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular includes the plural and vice versa.

    **3.7**    <u>**Acceptance by Trustee.**</u>  That Trustee accepts this Deed of Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

    **3.8**    <u>**Acceleration of Indebtedness Upon Sale of the Property.**</u>  In the event Trustor, or any successor in interest to Trustor in the Property, sells, conveys, alienates, assigns, transfers, encumbers or disposes of the Property, or any part thereof or any interest therein, or becomes divested of its title or any interest therein in any manner or way, absolutely or for security, voluntarily or involuntarily, or enters into an agreement to do so, without the prior written consent of Beneficiary, then this Deed of Trust shall be in Default and Beneficiary may, at its election, declare the sums due under the Secured Document and the other Obligations, irrespective of the terms of the Secured Document and/or such other Obligations, immediately due and payable without notice. No waiver of the requirement of consent by Beneficiary as set forth herein shall be effective unless in writing. Consent by Beneficiary to any one or more transactions described above shall not constitute nor be deemed to be a consent, or waiver of the requirement of consent, as to any future or succeeding transactions.

    **3.9**    <u>**No Merger.**</u>  No merger shall occur, and Beneficiary shall not be deemed to have intended that any merger occur, as a result of Beneficiary's acquiring any other estate or interest in, or any other lien on, the Property, unless Beneficiary consents to a merger in writing.

    **3.10**    <u>**Severability; Construction; Governing Law.**</u>  If any term or provision of the Deed of Trust or the application thereof to any person, entity or circumstances shall to any extent be invalid or unenforceable, the remainder of the Deed of Trust, or the application of such terms or provision to persons, entities, or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby and each term or provision of the Deed of Trust shall be valid and enforceable to the fullest extent permitted by law. Headings in this Deed of Trust are for convenience only and do not govern, limit or aid in the interpretation of the provisions of this Deed of Trust. This Deed of Trust and the obligations secured hereby shall be governed by and interpreted in accordance with the laws of the State of California.

    **3.11**    <u>**Joint and Several.**</u>  If more than one Trustor is named herein, all obligations of Trustor hereunder are joined and several and references to "Trustor" shall refer to each and every trustor hereunder.  If Trustor is a partnership, Trustor's obligations hereunder are the joint and several obligations of all general partners in Trustor.

    **3.12**    <u>**Request for Notice.**</u>  Trustor requests that a copy of any notice of default and of any notice of sale hereunder be mailed to Trustor at the address hereinbefore set forth.

## EXHIBIT "A"

PLE Management, LLC –

PARCEL B OF PARCEL MAP NO. 18761, IN THE CITY OF VISTA, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JULY 31, 2001 AS FILE NO. 01-534489 OF OFFICIAL RECORDS.

PARCEL 2:
AN EASEMENT FOR DRAINAGE OVER, UNDER, ALONG, ACROSS AND THROUGH THAT PORTION OF PARCEL A DELINEATED AND DESIGNATED AS "PROPOSED 5' DRAINAGE EASEMENT RESERVED IN FAVOR OF PARCEL B." ON THE PARCEL MAP REFERRED TO IN PARCEL 1 ABOVE.

PARCEL 3:
AN EASEMENT FOR VEHICULAR PARKING, VEHICULAR AND PEDESTRIAN INGRESS AND EGRESS, SUBJECT TO THE TERMS CONTAINED IN AND AS DEFINED IN THAT CERTAIN DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS INCLUDING RECIPROCAL EASEMENTS, RECORDED MARCH 10, 2004 AS INSTRUMENT NO. 2004-0196727 OF OFFICIAL RECORDS, OVER, UNDER, ALONG AND ACROSS THE PARKING AREAS, DRIVEWAYS OTHER PARKING-RELATED IMPROVEMENTS, SIDEWALKS AND WALKWAYS OF PARCEL A OF PARCEL MAP NO. 18671, IN THE CITY OF VISTA, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF ON FILE IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, ON JULY 31, 2001 AS INSTRUMENT NO. 2001-534489 OF OFFICIAL RECORDS.

APN: 166-250-29-00

Kamron Everygreen, LLC –

All of Parcel 12 and that portion of parcel 13 of parcel map #287, in the City of Industry, County of Los Angeles, State of California, as shown on map filed in book 267, pages 7 to 9 inclusive of parcel maps, in the office o the county recorder if said county lying west of the following described line:  Beginning at a point on the North line of said parcel 13, said point being distant South 67 degree 08' 24" East a distance of 11 ft from the Northwest corner of said parcel 13; Thence leaving said North line South 22 degree 51' 36" West a distance of 164.59 feet to a point on the South line of said parcel 13, said point being South 69 degree 49' 36" East 3.27 feet from the Southwest corner of said parcel 13.

APN: 8242-024-081

8

**3.13    Interpretation.** The words "herein," "hereof," "hereunder" and words of similar import refer to this Deed of Trust as a whole and not to any particular Article, Section or subdivision hereof. All references to "Articles," "Sections," "Exhibits" and other parts or subdivisions are to the corresponding Articles, Sections, Exhibits or parts or subdivisions of this Deed of Trust, unless otherwise specified. The terms "include," "including" and forms thereof mean inclusive without limitation. The term "day" means calendar day. The term "person" means any individual, corporation, partnership, limited liability company, governmental entity or authority, or other entity of any kind.

SIGNATURE OF TRUSTOR:

Kamron Evergreen, LLC a California limited liability company

By: _____
        Nasser Palizban, Manager

PLE Management, LLC  a California limited liability company

By: _____
        Nasser Palizban, Manager

STATE OF CALIFORNIA                    )
                                                       )
COUNTY OF_____)

On _____, before me,_____, Notary Public, personally appeared _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature                                                                                      (Seal)

7

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**    CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                )
County of _San Diego_              )

On _03, 04, 2015_ before me, _Rahim Salehpour, a notary Public_
　　　　　　*Date*　　　　　　　　　　　*Here Insert Name and Title of the Officer*
personally appeared _Nasser Palizban_
　　　　　　　　　　　　　*Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
　　　　　*Signature of Notary Public*

```
RAHIM SALEHPOUR
Commission # 1964861
Notary Public - California
San Diego County
My Comm. Expires Jan 21, 2016
```

*Place Notary Seal Above*
─────────────── **OPTIONAL** ───────────────
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _Deed of Trust_　　Document Date: _____
Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Individual　☐ Attorney in Fact | ☐ Individual　☐ Attorney in Fact |
| ☐ Trustee　☐ Guardian or Conservator | ☐ Trustee　☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

# EXHIBIT H

DOC# 2015-0429207

Aug 13, 2015  09:55 AM
OFFICIAL RECORDS
Ernest J. Dronenburg, Jr.,
SAN DIEGO COUNTY RECORDER
FEES:   $84.00
PCOR: N/A
PAGES: 8

RECORDING REQUESTED BY:
Jalali Family Trust dated 08-31-2005 and Jalali
Family Trust (two separate trusts)

AND WHEN RECORDED MAIL TO:

Bahman and Bijan Jalali
7265 Park Village Road
San Diego, CA 92129

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS,
## AND SECURITY AGREEMENT

This DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, AND SECURITY AGREEMENT
("**Deed of Trust**"), is made as of December 20, 2013, by and among Cyrus Carroll LLC, a California
limited liability company ("**Trustor**"), whose address is 450 S. Melrose Drive, Suite 110, Vista, CA
92081; CHICAGO TITLE COMPANY ("**Trustee**"), and Jalali Family Trust dated 08-31-2005 and Jalali
Family Trust (two separate trusts) 7265 Park Village Road San Diego, CA 92129 (collectively,
"**Beneficiary**").

1.    **Grants; Obligations Secured.**

    1.1    **Real Property.**    Trustor irrevocably GRANTS, TRANSFERS AND ASSIGNS to
Trustee, its successors and assigns, in trust, with power of sale and right of entry and possession, all of
Trustor's present and future estate, right, title and interest in and to all of the following property, now
owned or hereafter acquired (collectively the "**Property**"):

    (a) that certain real property located in the City of San Diego, State of California,
described as set forth on **Exhibit "A"** attached hereto and incorporated by this reference
(the "**Real Property**"), (b) all present and future appurtenances to the Real Property,
(c) all improvements and fixtures on the Real Property, and (d) all present and future
leases, licenses, franchises, concessions, subleases, rental agreements and other
agreements for possession, use or occupancy pertaining to any of the Real Property and
all guarantees of, security for, and letters of credit and other credit enhancements given in
connection with any person's obligations under any thereof, and all of the rents, issues,
royalties, profits, receipts, revenue and income (including security deposits) of any
thereof or any of the Property (collectively the "**Rents**") (subject, however, to the
absolute assignment thereof set forth hereinafter and the right, power and authority
hereinafter given to and conferred upon Beneficiary to collect and apply the Rents).

    1.2    **Obligations Secured.**    The grants, assignments and transfers made in **Section 1.1** secure,
in such order of priority as Beneficiary, in its absolute discretion, may determine, the due, prompt and
complete payment, performance, observance and satisfaction by Trustor of all of its obligations,
covenants, agreements and conditions under all of the following (collectively, the "**Obligations**"): (a) that
certain Promissory Note Secured by Deed of Trust of even date herewith, made by Nasser Palizban
("**Borrower**") in favor of Beneficiary (the "**Secured Document**"), securing a loan in the amount of Three
Hundred  Thousand Dollars ($300,000.00), (b) this Deed of Trust, including all additional advances made
by Beneficiary under this Deed of Trust, (c) all other agreements to which Trustor (or the then owner of
the Property) and Beneficiary may now or hereafter be or become parties which state that Trustor's (or

1

such owner's) obligations under such agreements are secured by this Deed of Trust, and (d) all extensions, modifications, substitutions, replacements and renewals of any of the foregoing.

**1.3** **Release of Property.** Trustor may obtain the release of the Real Property by payment of the then current outstanding amount of the Obligations, in which case this Deed of Trust shall be immediately released and reconveyed.

2. To protect the security of this Deed of Trust, Trustor represents, warrants and agrees as follows:

**2.1** **Repair; Compliance with Laws.** Trustor shall keep the Property in good condition and repair, not remove or demolish any improvements or fixtures thereon; complete or restore promptly and in good and workmanlike manner any improvement or fixture which may be constructed, damaged or destroyed thereon and pay when due all claims for labor performed and materials furnished therefor, comply with all laws affecting the Property or requiring any alterations or improvements to be made thereon, not commit or permit waste thereof; not commit, suffer or permit any act upon the Property in violation of law; cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of the Property may be reasonably necessary.

**2.2** **Defense Obligations; Reimbursement.** Trustor shall appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee. Trustor shall immediately reimburse Beneficiary for all fees and costs, including attorneys' and experts' fees and costs, incurred by Beneficiary for: (a) enforcement of any of the Obligations, this Deed of Trust or any of its terms, or the exercise of any rights or remedies hereunder and/or at law, in equity or otherwise, whether or not any action or proceeding is filed; (b) representation of Beneficiary in any bankruptcy, insolvency, reorganization or other debtor-relief or similar proceeding of or relating to Trustor, to any person liable (by way of co-obligation, guaranty, assumption, endorsement or otherwise) upon or in connection with any of the Obligations, or to the Property; or (c) representation of Beneficiary in any action or proceeding relating to the Property, whether commenced by Beneficiary or any other person, including foreclosure, receivership, lien or stop-notice enforcement, bankruptcy, eminent domain and probate actions or proceedings.

**2.3** **Taxes and Assessments.** Trustor shall pay, at least ten days before delinquency, all taxes and assessments affecting the Property, including assessments on appurtenant water stock and, when due, all encumbrances, charges and liens, with interest, on the Property, or any part thereof, which appear to be prior, superior or junior hereto, and all costs, fees and expenses of this Deed of Trust.

**2.4** **Protection of Security.** Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon the Property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

**2.5** **Payment.** Trustor shall pay immediately and without demand all sums expended by Beneficiary or Trustee pursuant to Section 2.4, with interest from the date of expenditure at the rate of five percent (5%) per annum, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

2

**2.6**    **Security Interest Information.**

2.6.1    **Representations and Warranties.**    Trustor represents and warrants to Beneficiary that: (a) Trustor's full, correct and legal name is as shown in the first paragraph of this Deed of Trust; (b) the Secured Obligations are incurred by Trustor for business, commercial and/or investment purposes, and not primarily for personal, family, or household purposes; and (c) the transaction that is the subject of the Secured Document is not a consumer-goods transaction or a consumer transaction.

2.6.2    **Changes in Name or State of Organization.**    Trustor will make no change to its name or address without providing Beneficiary thirty (30) days' prior written notice.

**2.7**    **Indemnity.**    Trustor will indemnify, defend, and hold Beneficiary harmless from and against all liabilities, claims, actions, costs, and expenses, including attorneys' fees, arising from or related to Trustor's ownership or use of any of the Property, or Beneficiary's exercise of any of its rights or remedies under this Deed of Trust.

**2.8**    **Further Agreements, Acts.**    Trustor shall execute any and all further agreements, assignments, documents and financing statements, and take such other further acts, as Beneficiary may reasonably request from time to time in order to evidence, protect, perfect or continue the security interest of Beneficiary in the Property or otherwise carry out the purposes and intent of this Deed of Trust.

**3.**    It is further agreed:

**3.1**    **Other Trustee Rights.**    At any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed of Trust and the Secured Document (to the extent legally required) for endorsement, and without affecting the personal liability of any person for payment of the Obligations, Trustee may: reconvey any part of the Property; consent to the making of any map or plat thereof; join in granting any easement thereon, or join in any extension agreement or any agreement subordinating the lien or charge hereof.

**3.2**    **Reconveyance.**    Upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed of Trust and the Secured Document (to the extent legally required) to Trustee for cancellation and retention or other disposition as Trustee in its sole discretion may choose and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

**3.3**    **Leases and Rents.**

3.3.1    Trustor absolutely and unconditionally hereby ASSIGNS and TRANSFERS to Beneficiary all of the Rents; reserving to Trustor only the right, prior to any Default hereunder (which right shall terminate immediately and automatically upon any such Default, without notice), to collect, receive and retain the Rents as and when (and not before) they become due and payable, but not otherwise. Trustor shall, at the request of Beneficiary, execute such further assignments to Beneficiary of the Rents as Beneficiary may require.

3.3.2    Upon any Default hereunder (as defined below), Beneficiary may, at any time and without notice, irrespective of whether a notice of default has been delivered to Trustee, and without regard to the adequacy of the security for the Obligations, in person or by agent or representative with or without bringing any action or proceeding, or by a receiver appointed by a court, do any one or more of

3

the following, in its own name or in the name of Trustor: (a) enter upon, take possession of and/or operate the Property, or any part thereof; (b) sue for or otherwise collect and receive Rents (including those past due and unpaid) and apply such Rents (less costs and expenses of operation (including reserves) and collection, including attorneys' and experts' fees and costs) to the payment of the Obligations in such order and in proportions as Beneficiary in its absolute discretion may determine; (c) dispossess by usual proceedings any lessee defaulting in the payment of Rents; (d) lease the Property or any part thereof; (e) do any other acts which Beneficiary deems proper to protect this assignment and its interests hereunder until all of the Obligations are paid in full; and (f) exercise any other right permitted by law. The exercise of any of the foregoing rights shall not cure or waive any Default or notice of default hereunder or invalidate any act done pursuant to such notice, nor render Beneficiary a mortgagee in possession.

3.3.3    Trustor shall, at its sole cost and expense: (a) timely perform and satisfy every obligation and condition of all existing and future leases of the Property (the "**Leases**") to be performed or satisfied by the lessor thereunder; (b) give prompt notice to Beneficiary of any notice of default given or received by Trustor under the Leases, together with a complete copy of any such notice of default; (c) enforce, short of termination, the performance and satisfaction of every obligation and condition of the Leases to be performed or satisfied by the lessees thereunder; (d) appear in and defend any action arising out of or relating to any of the Leases or the obligations of any party thereunder; and (e) furnish to Beneficiary true and correct copies of all Leases if requested in writing.

### 3.4    <u>**Default and Remedies.**</u>

3.4.1    <u>**Default.**</u>    It shall be a default under this Deed of Trust if any of the following occurs ("**Default**"): (a) a default by Trustor under the Secured Document which is not cured within ten (10) business days after written notice thereof to Trustor from Beneficiary; (b) default by any person liable (by way of co-obligation, guaranty, assumption, endorsement or otherwise), including but not limited to Borrower, upon or in connection with any of the Obligations under the Secured Document which is not cured within ten (10) business days after notice thereof from Beneficiary; or (c) Trustor, Borrower or any person liable (by way of co-obligation, guaranty, assumption, endorsement or otherwise) upon or in connection with any of the Obligations: (i) voluntarily suspends the transaction of business; (ii) becomes insolvent or unable to pay its debts as they mature; (iii) makes an assignment for the benefit of creditors; (iv) becomes the subject of a bankruptcy, reorganization or similar debtor-relief proceeding unless, in the case of an involuntary petition filed against Trustor or Borrower, as applicable, the petition is dismissed within sixty (60) days; (v) becomes, or any of its property becomes, the subject of appointment of a receiver, trustee, or conservator, unless, in the case of such appointment without Trustor's or Borrower's, as applicable, consent, the appointment is vacated within sixty (60) days; (vi) has any of its property become subject to any attachment, execution, sequestration or other judicial seizure not discharged within sixty (60) days; or (vii) fails to pay or discharge any judgment against it, singly or in the aggregate, in excess of $50,000.00, or to appeal such judgment(s) and obtain a stay thereof within ten (10) days of entry.

3.4.2    <u>**Remedies.**</u>    Upon the occurrence of a Default hereunder, Beneficiary may in addition to all of its other rights and remedies, all of which are cumulative, do any one or more of the following: (a) declare all sums secured hereby immediately due and payable; (b) enter on or into the Property, in person, by agent or by court appointed receiver, and take such action as Beneficiary may determine desirable to complete any unfinished development and/or to manage and operate the Property and/or to collect Rents, and Beneficiary may apply any Rents collected against the Obligations without in any way curing or waiving any Default of Trustor; (c) foreclose, non-judicially and/or by judicial action, in any order, separately or together, at the same or different times and places, in one sale or any number of separate sales, with disclaimers of any or all warranties, against some or all of the Property, and/or any

4

other real or personal property security for the Obligations, without waiving any other part thereof; (d) obtain the appointment of a receiver ex parte and without prior notice to Trustor, which notice Trustor hereby waives; (e) do any other acts which Beneficiary deems proper to protect this Deed of Trust and its interests hereunder until all of the Obligations are paid and performed in full; and (f) exercise any other legal, equitable or contractual right or remedy against Trustor and/or any security and/or any other person liable (by way of co-obligation, guaranty, assumption, endorsement or otherwise) upon the Obligations.

3.4.3    **Effect of Exercise of Remedies.**  No remedy provided or permitted under this Deed of Trust is exclusive of any other, or of any remedy provided or permitted by law, equity or any instrument or agreement evidencing, securing, guarantying or relating to any of the Obligations.  Each such remedy is cumulative and in addition to every other.  No exercise of remedies, including foreclosure, against any part of the Property shall exhaust or extinguish Beneficiary's rights to exercise remedies, including foreclosure, against any other part of the Property until the Obligations are paid in full.  A sale of less than all of the Property or any defective or irregular sale made under this Deed of Trust shall not exhaust or extinguish the power of sale provided for in this Deed of Trust or any right or power of sale provided by law, and subsequent sales may be made until the Obligations are paid in full, or the entire Property sold, without defect or irregularity.  Beneficiary may exercise any one or more of its remedies at its option without regard to the adequacy of its security.

3.4.4    **Sale(s) by Trustee of the Property.**

(a)    If Beneficiary elects to sell any of the Property under the power of sale herein granted, Trustee shall record and give all notices of default(s), election(s) to sell and sale(s) as may be required by law.  Upon the expiration of such time(s) as is required by law, Trustee shall, without demand on Trustor, sell all or such portions of the Property as Beneficiary may direct in its sole discretion upon any terms and conditions specified by Beneficiary and permitted by law, at the time and place (or the times and places) fixed in the notice(s) of sale(s) (subject to postponement as provided below), as a whole or in separate parcels or items, and in such order, and in one sale or any number of separate sales, all as Beneficiary may direct in its sole discretion, at public auction(s), to the highest bidder(s) for cash payable at the time of sale(s).  Trustor waives all rights (i) to require that the Property be sold together or separately, (ii) to direct the order in which any of the Property will be sold, and (iii) to have any of the Property marshalled upon any sale.  Trustee may postpone any sale from time to time by public announcement at the time and place of the sale as fixed by notice or by prior postponement, and may without further notice make such sale at the time fixed by the last postponement.

(b)    Any person, including Trustee or Beneficiary, may purchase at such sale.  Trustee shall deliver to the purchaser a deed conveying the Property or portion thereof sold, but without any covenant or warranty, express or implied.  The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof.

(c)    Upon a sale by Trustee, and after deducting all costs, expenses, and fees of Trustee and of this trust (including the cost of evidence of title in connection with the sale), Trustee shall apply the proceeds from the sale to the payment of the Obligations in such order as Beneficiary may direct and the remainder, if any, to the person or persons legally entitled thereto.

3.5    **Successor Trustee.**  Beneficiary, or any successor in ownership of any of the Obligations, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where the Property is situated shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties.

Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the recordation information for this Deed of Trust, and the name and address of the new Trustee.

**3.6** **Binding.** That this Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular includes the plural and vice versa.

**3.7** **Acceptance by Trustee.** That Trustee accepts this Deed of Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

**3.8** **Acceleration of Indebtedness Upon Sale of the Property.** In the event Trustor, or any successor in interest to Trustor in the Property, sells, conveys, alienates, assigns, transfers, encumbers or disposes of the Property, or any part thereof or any interest therein, or becomes divested of its title or any interest therein in any manner or way, absolutely or for security, voluntarily or involuntarily, or enters into an agreement to do so, without the prior written consent of Beneficiary, then this Deed of Trust shall be in Default and Beneficiary may, at its election, declare the sums due under the Secured Document and the other Obligations, irrespective of the terms of the Secured Document and/or such other Obligations, immediately due and payable without notice. No waiver of the requirement of consent by Beneficiary as set forth herein shall be effective unless in writing. Consent by Beneficiary to any one or more transactions described above shall not constitute nor be deemed to be a consent, or waiver of the requirement of consent, as to any future or succeeding transactions.

**3.9** **No Merger.** No merger shall occur, and Beneficiary shall not be deemed to have intended that any merger occur, as a result of Beneficiary's acquiring any other estate or interest in, or any other lien on, the Property, unless Beneficiary consents to a merger in writing.

**3.10** **Severability; Construction; Governing Law.** If any term or provision of the Deed of Trust or the application thereof to any person, entity or circumstances shall to any extent be invalid or unenforceable, the remainder of the Deed of Trust, or the application of such terms or provision to persons, entities, or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby and each term or provision of the Deed of Trust shall be valid and enforceable to the fullest extent permitted by law. Headings in this Deed of Trust are for convenience only and do not govern, limit or aid in the interpretation of the provisions of this Deed of Trust. This Deed of Trust and the obligations secured hereby shall be governed by and interpreted in accordance with the laws of the State of California.

**3.11** **Joint and Several.** If more than one Trustor is named herein, all obligations of Trustor hereunder are joined and several and references to "Trustor" shall refer to each and every trustor hereunder. If Trustor is a partnership, Trustor's obligations hereunder are the joint and several obligations of all general partners in Trustor.

**3.12** **Request for Notice.** Trustor requests that a copy of any notice of default and of any notice of sale hereunder be mailed to Trustor at the address hereinbefore set forth.

**3.13** **Interpretation.** The words "herein," "hereof," "hereunder" and words of similar import refer to this Deed of Trust as a whole and not to any particular Article, Section or subdivision hereof. All references to "Articles," "Sections," "Exhibits" and other parts or subdivisions are to the corresponding Articles, Sections, Exhibits or parts or subdivisions of this Deed of Trust, unless otherwise specified. The

terms "include," "including" and forms thereof mean inclusive without limitation. The term "day" means calendar day. The term "person" means any individual, corporation, partnership, limited liability company, governmental entity or authority, or other entity of any kind.

SIGNATURE OF TRUSTOR:

Cyrus Carroll LLC, a California
limited liability company's

By: _____
Nasser Palizban, Manager

STATE OF CALIFORNIA          )
                             )
COUNTY OF San Diego          )

On 12/9/13 , before me, Carmen Donahue , Notary Public, personally appeared Nasser Palizban who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Carmen Donahue
_____
Signature

OFFICIAL SEAL
CARMEN DONAHUE
NOTARY PUBLIC-CALIFORNIA
COMM. NO. 2044622
SAN DIEGO COUNTY
MY COMM. EXP. OCT. 7, 2017

(Seal)

7

**EXHIBIT "A"**
**Legal Description**

PARCEL 3 OF PARCEL MAP NO. 7190 IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, APRIL 25, 1978 AS INSTRUMENT NO. 78-165479 OF OFFICIAL RECORDS.

APN: 343-360-14

# EXHIBIT I

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF SAN DIEGO**

**NORTH COUNTY**

**MINUTE ORDER**

DATE: 02/01/2016          TIME: 08:30:00 AM          DEPT: N-28

JUDICIAL OFFICER PRESIDING: Earl H. Maas, III
CLERK:  Amy Wagoner
REPORTER/ERM: Not Reported
BAILIFF/COURT ATTENDANT:  Chris Mata

CASE NO: **37-2015-00035619-CU-OR-NC**    CASE INIT.DATE: 10/14/2015
CASE TITLE: **Jalali vs Palizban[IMAGED]**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: Other Real Property

---

**EVENT TYPE**: Ex Parte

---

**APPEARANCES**
Kyle E Yaege, counsel, present for Plaintiff(s).
Robert J Solis, counsel, present for Defendant(s).

Court and counsel confer, not reported.

Plaintiff requests that defendant's Cyrus Carroll, LLC and Kamron Evergreen, LLC be dismissed without prejudice. Court grants the request.

The Court orders Kamron Evergreen, LLC, Cyrus Carroll, LLC dismissed without prejudice from the Complaint.

The Motion Hearing (Civil) is scheduled for 02/26/2016 at 01:30PM before Judge Earl H. Maas, III.

Opposition to be filed by 2/17/16. Reply to be filed by 2/23/16. Parties stipulate that e-mail service is sufficient.

Plaintiff's Ex parte Application Issuing Temporary Restraining Order is **granted.** This order will require that funds received be used only to continue the management of the property owned by PLE Management, LLC.

Parties waive notice.


_____
  Judge Earl H. Maas, III

---

DATE: 02/01/2016                                                                                Page 1
DEPT:  N-28                          MINUTE ORDER                        Calendar No.

# EXHIBIT J

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF SAN DIEGO**
**NORTH COUNTY**

**MINUTE ORDER**

DATE: 03/11/2016            TIME: 01:30:00 PM        DEPT:  N-28

JUDICIAL OFFICER PRESIDING: Earl H. Maas, III
CLERK:  Noreen McKinley
REPORTER/ERM: Not Reported
BAILIFF/COURT ATTENDANT:  Chris Lauraitis

CASE NO: **37-2015-00035619-CU-OR-NC**   CASE INIT.DATE: 10/14/2015
CASE TITLE: **Jalali vs Palizban[IMAGED]**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: Other Real Property

---

**EVENT TYPE**: Motion Hearing (Civil)

---

**APPEARANCES**
Kyle E Yaege, counsel, present for Plaintiff(s).
Robert J Solis, counsel, present for Defendant(s).

---

The Court hears oral argument and CONFIRMS the tentative ruling as follows:
Plaintiffs' motion for appointment of receiver is granted. Krista Frietag is appointed as receiver. The receiver's undertaking is set in the amount of $5,000. CCP § 567(b).  The plaintiffs' undertaking  is set in the amount of $5,000. A preliminary injunction shall issue restraining Defendants from interfering with the receiver's collection of rents and management of the property. An undertaking for the preliminary injunction shall be filed in the amount of $1,500.

Receivership is effective as of April 11, 2016.

_____
 Judge Earl H. Maas, III

# EXHIBIT K

F I L E D
Clerk of the Superior Court

APR 14 2016

BY Noreen McKinley, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN DIEGO – NORTH DIVISION

| | |
|---|---|
| BAHMAN JALALI as Trustee of the JALALI FAMILY TRUST, and BIJAN JALALI as Trustee of the JALALI FAMILY TRUST DATED 8/31/2005,<br><br>Plaintiff,<br><br>vs.<br><br>NASSER PALIZBAN, an individual; and QUALITY DISCOUNT ICE CREAM DISTRIBUTORS, INC., a California corporation; CYRUS CARROLL, LLC, A California limited liability company, KAMRON EVERGREEN, LLC, a California limited liability company, PLE MANAGEMENT, LLC., a California limited liability company, and DOES 1-25<br><br>Defendants. | CASE NO.: 37-2015-00035619-CU-OR-NC<br><br>[PROPOSED] MODIFIED ORDER APPOINTING RECEIVER<br><br>Judge:   Hon. Earl H. Maas, III<br>Dept.:   N-28<br>Filed:    October 14, 2015<br>Trial:    None Set |

1 of 16
[PROPOSED] MODIFIED ORDER APPOINTING RECEIVER

## ORDER APPOINTING RECEIVER

**IT IS HEREBY ORDERED that:**

1. Pursuant to Code of Civil Procedure § 529 subd. (a), an undertaking for the preliminary injunction shall be deposited by the Plaintiff in the amount of One Thousand Five Hundred ($1,500) dollars with this Court on or before April 11, 2016.

2. Pursuant to Code of Civil Procedure § 567 subd. (b), Krista Frietag of E3 Advisors, 355 South Grand Avenue, Suite 2450, Los Angeles, CA, 90071, telephone (213) 943-1374, shall be and hereby is appointed as Receiver, upon filing a receiver's oath and receiver's bond in the amount of Five Thousand ($5,000) dollars with this Court on or before April 11, 2016, to enter upon and take possession of all real and personal property collateral for the Loans described in the Complaint filed in this Action (including the real property legally described in Exhibit A hereto) and including adjacent grounds and improvements, real and personal property commonly known as 450 S. Melrose Dr., Vista CA 92081 [APN 166-250-29-00], (the "Property"), including all proceeds thereof and in so doing, assume control of the use, operation, repair and maintenance thereof, conduct of business thereon, and do any or all of the following:

    a. Exclude Defendants NASSER PALIZBAN, QUALITY DISCOUNT ICE CREAM DISTRIBBUTORS, INC. (collectively, the "Borrower"), and anyone claiming under or through said Borrower who does not have a valid lease or rental agreement for possession of the Property, or any portion thereof; from possession of the Property, or any portion thereof;

    b. To take possession and control of the Property and any and all proceeds, receipts, accounts, moneys, deposits, and disbursement arising out of or from the Property; to receive, preserve, protect and maintain control of the Property, or any part or parts thereof, including, but not limited to, the changing of locks and security codes, the relocating portions of the Property to safeguard it, the engaging of independent security personnel, the taking of physical inventories and the placement of such insurance coverage as may necessary or desirable;

    c. To manage, operate and carry on the rental of units on the Property, including the power and authority to enter into any agreement or incur any obligations in the

**[PROPOSED] MODIFIED ORDER APPOINTING RECEIVER**

1  ordinary course of such Business, to cease to carry on all or any part of such Business, or to
2  perform any contracts of Defendant pertaining to the Property and the operation thereof;

3     d.     Incur all necessary expenses for the care, preservation, and maintenance of
4  the Property;

5     e.     Pay all necessary expenses for the care, preservation, and maintenance of
6  the Property;

7     f.     Demand, collect, and receive any revenue, charges, receipts, rents, issues,
8  income, profits and lease and other payments due from room guests, tenants, lessees, customers
9  or occupants of the Property or any portion thereof, including, without limitation, all rents from
10  existing tenants;

11     g.     To rent or lease from time to time any part of the Property and to keep the
12  buildings thereon insured and in good repair, and to pay the taxes and assessments of the
13  Property incurred during the receivership;

14     h.     Bring and prosecute all proper actions for collection of rent, revenue,
15  charges or lease payments due on the Property, as well as all necessary actions and proceedings
16  for removal of tenants, occupants or lessees in default of any rental or lease agreement and to
17  bring and prosecute all proper actions for the protection of the Property or to recover possession
18  thereof;

19     i.     To employ agents or employees to collect said revenues and rents, manage
20  the Property, and keep the same insured and in good repair, as the Receiver shall deem
21  necessary, and to pay the reasonable value of said services out of the rent receipts, if any;

22     j.     To open bank accounts as deemed necessary by the Receiver in
23  connection with the above referenced duties;

24     k.     To forthwith obtain a detailed inventory of all furniture, fixtures and
25  equipment, and operating supplies and equipment at the Property, if such an inventory exists, and
26  to prepare such an inventory if none exists;

27     l.     To obtain from Defendants and their agents copies of all records
28  pertaining to and/or necessary to manage, operate, and safeguard the Property and otherwise

3 of 16

**[PROPOSED] MODIFIED ORDER APPOINTING RECEIVER**

1   carry out the duties and responsibilities of the Receiver as set forth herein, regardless of where

2   such records are located;

3           m.      To apply for, obtain and renew as necessary all licenses and permits

4   required for the operation of the Property;

5           n.      To take all such further actions as are reasonably necessary to carry out

6   the Receiver's duties and responsibilities relating to the operation of the Property;

7           o.      To undertake all powers and duties referred to in the Complaint initiating

8   the captioned action and as provided in the loan documents relating to the Loans set forth herein,

9   together with all powers reasonably necessary to carry out the Receiver's duties and

10  responsibilities, including but not limited to completion of any repairs or related construction; in

11  this regard, the Receiver shall protect and preserve the security for the Notes as that term is

12  defined in the Deeds of Trust dated June 30, 2015, and December 20, 2013 attached to the

13  Complaint in this action (the "Loan(s)");

14          p.      To review, examine and analyze the development and entitlement

15  documents, and activities and related parties concerning the Property, and provide a report

16  pertaining to status, scope and viability of said development and entitlement activities; however,

17  the Owner/Borrower, and its employees, agents, attorneys, consultants to commence with and

18  carry out any further activities arising from and related to development of the Property, Receiver

19  shall apply to the Court, with notice to Borrower, and obtain Court approval;

20          q.      Generally do anything that Borrowers could legally do if Borrowers were

21  in possession of the Property, subject to whatever fiduciary obligations are imposed by law upon

22  a Receiver;

23          r.      To engage consultants and/or real estate brokerage professionals to

24  examine, analyze and determine the viability of disposition, activities and/or plan pertaining to

25  the Property; however, the implementation of any plan shall be subject to Court approval, after

26  application to Court and providing notice to Borrower; and

27          s.      Otherwise protect, manage, operate and hold the Property in accordance

28  with the terms of this Order until further order of this Court.

4 of 16

**[PROPOSED] MODIFIED ORDER APPOINTING RECEIVER**

<u>Receiver's Oath:</u>

3. The Receiver shall execute a Receiver's oath, which shall be filed in this Court by no later than 5:00 p.m. on April 11, 2016.

4. The Receiver shall also post a bond with this Court in the amount of Five Thousand ($5,000) dollars no later than April 11, 2016.

<u>Possession of Property and Collection of Revenues:</u>

5. The Receiver shall:

 a. Enter upon and take possession of the Property or any part thereof, all of the improvements thereon, all of the appurtenances thereto, and all of the personal property associated therewith; all such property being coextensive with the definition of Property (set forth above) and as otherwise related to and arising from the Property.

 b. Collect (and sue for) all room revenues, room charges, rents, issues, profits, income, and revenue of every type (collectively "Revenue"), past, present or future, from any parties, relating in any manner to the Property, including but not limited to amounts currently in the possession of Borrowers and/or any other persons, or which are now due or hereafter may become due from the tenants and other users of all or any portion of the Property and/or improvements thereto; and

 c. Collect all room, booking and security deposits and other sums being held in trust for the benefit of tenants and/or relating to the Property and/or improvements thereto.

6. So long as the Receiver is in possession of the Property as provided herein, the guests, customers, tenants, and others occupying, using, possessing or leasing the Property, or any portion thereof, shall make all payments to the Receiver.

7. The Receiver shall establish bank accounts (the "Bank Accounts") for the deposit of monies and funds collected and received in connection with the Receivership estate; in this regard, the Receiver is authorized and empowered to use the Borrowers' federal and/or state tax identification numbers to establish bank accounts for the deposit of monies and funds collected and received in connection with his administration of the Receivership estate.  Such Bank Accounts shall be established and maintained at any federally-insured banking institutions or

[PROPOSED] MODIFIED ORDER APPOINTING RECEIVER

savings associations located in California, which the Receiver deems appropriate and which are not parties to this case; such Bank Accounts shall be interest bearing. All monies coming into the hands of the Receiver through the Receivership estate shall be deposited into the Bank Accounts as follows:

a.    All Revenues shall be deposited into a merchant account from which funds shall be transferred to a general account and a payroll account and such other accounts as customarily used by similar businesses on an as needed basis; and

b.    All room, conference and security deposits and other pre-designated use funds shall be deposited into, such separate "Trust Accounts" as are necessary to segregate each designated use fund.

8.    Without further order of this Court, the Receiver shall expend money only for the purposes herein authorized. Any Revenues collected by the Receiver shall be applied: first, to payment of the costs and expenses of the Receivership, including the costs of preserving and protecting the Property such as repairs of the Property, including any deferred maintenance projects, insurance premiums, impositions, utility charges and other costs, expenses and charges of operating the Property, attorneys' fees incurred by the Receiver, borrowings of the Receiver, Receiver's fees, premiums on Receiver's bonds, and the costs of discharging any obligation or liability of Borrower; and second, to payment of the indebtedness secured by the Deeds of Trust and Assignment, including but not limited to the reasonable attorneys' fees and other expenses incurred by Lender in connection with the action and proceedings in which the Receiver was appointed. The balance of funds shall be held by the Receiver pending further order of this Court.

9.    Within sixty (60) days after taking possession of the Property, the Receiver shall file an inventory of all Property acquired pursuant to this Order.

**Management Activities:**

10.    The Receiver shall care for, preserve, and maintain the Property, and incur the expenses necessary for the care, preservation, and maintenance of the Property; in this regard, the Receiver shall take all action necessary, as determined in the Receiver's reasonable

**[PROPOSED] MODIFIED ORDER APPOINTING RECEIVER**

1  discretion, to protect the Property from harm, damage, destruction and/or waste, including
2  without limitation, providing for security guards, fencing, locks, and other safety and security
3  measures, and, without limitation, the Receiver shall be authorized to change the existing locks
4  on all doors providing access to the Property and all improvements thereon which he deems
5  necessary to protect said Property.

6      11.    The Receiver shall do all things and incur the risks and obligations ordinarily
7  incurred by owners, managers, and operators of similar businesses and enterprises as such
8  Receiver. No such risk or obligation so incurred shall be the personal risk or obligation of
9  Receiver, but shall be solely the risk and obligation of the Receivership estate. No individual or
10  entity may sue the Receiver without first obtaining the permission of this Court.

11      12.    The Receiver is authorized to (a) complete any repairs or construction that may be
12  in progress; perform such maintenance and make such repairs and alterations as the Receiver
13  deems necessary for the protection or operation of the Property; (b) use all stores of materials,
14  supplies and equipment on the Property and replace such items at the expense of the
15  Receivership estate; (c) pay all impositions, premiums, utility charges and any and all other
16  charges, costs and expenses of operating the Property; and (d) execute, cancel or modify leases
17  or contracts providing for management, maintenance or other services rendered to the Property;
18  and generally do anything reasonably necessary to protect and preserve the Property, including
19  Revenue.

20      13.    The Receiver is authorized and empowered to take any and all steps necessary to
21  receive, collect and review all mail addressed to the Borrower including, but not limited to, mail
22  addressed to any post office boxes held in the name of the Borrower, and the Receiver is
23  authorized to instruct the U.S. Postmaster to reroute, hold, and or release said mail to said
24  Receiver. Mail reviewed by the Receiver in the performance of his duties will promptly be
25  forwarded to the Borrower after review by the Receiver; although, Receiver shall be authorized
26  to retain copies of the same as well as payments and other Revenue contained therein.

27      14.    The Receiver is authorized to delegate its duties to qualified employees or
28  contractors as necessary or desirable to perform and undertake the Receiver's obligations as

7 of 16

**[PROPOSED] MODIFIED ORDER APPOINTING RECEIVER**

provided herein.  The Receiver and her agents shall be compensated for services pursuant to the rates set forth in the Receiver's Declaration and the Receiver is authorized to pay such amounts to himself and to her employees and contractors on a monthly basis from the Receivership estate as otherwise provided below.

15.    Subject to further order of this Court, except as otherwise set forth in this Order, the Receiver may (a) employ agents, employees, clerks, and accountants to administer the Receivership estate; (b) purchase materials, supplies and other services related to administering Receivership estate; (c) pay for the foregoing at ordinary and usual rates out of the funds that shall come into the Receiver's possession;  notwithstanding the foregoing and subject to a cost not to exceed Twenty Thousand (**$20,000.00**) Dollars without further order of this Court, the Receiver is authorized to retain legal counsel of his choosing to represent him and assist him with the performance of his duties as set forth herein.

16.    Without further Court approval, the Receiver may make and enter into leases for a date or term not exceeding five (5) years with new or existing tenants, may eject non-performing tenants, and, for periods affecting one year or less of operations, may set or modify rents and terms of rent.  The Receiver is authorized to employ and compensate (at usual and customary rates) unlawful detainer attorneys or eviction services with respect to the operation of the Property.  The Receiver may solicit and negotiate the terms of leases for periods in excess of five (5) years and may employ and compensate (at usual and customary rates) counsel to negotiate forms of documents in connection therewith, but the Receiver shall not execute such leases for terms in excess of five (5) years except upon further order of this Court.

17.    Any security or other deposits that have been paid to Borrower or its agents and that are not paid over to the Receiver, and over which the Receiver has no control, shall be obligations of the Borrower and may not be refunded by the Receiver without further order of this Court. Any other room, conference, security or other deposits that have been paid or may be paid to the Receiver, if otherwise refundable under the terms of their leases or agreements with the Receiver, shall be refundable by the Receiver in accordance with their leases or agreement and shall be escrowed by Receiver until all obligations relating to said deposits are assumed by

8 of 16
**[PROPOSED] MODIFIED ORDER APPOINTING RECEIVER**

1  the ultimate owner of the Property after the conclusion of foreclosure or other transaction

2  resulting in the removal of Defendant from title or further order of this Court.

3      18.    Upon taking possession of the Property, the Receiver shall determine whether

4  there is sufficient insurance coverage.  Borrower shall immediately arrange for the Receiver to

5  be named as an additional insured on all insurance policies relating to the Property for the period

6  that the Receiver shall be in possession of the Property.  If sufficient insurance coverage does not

7  exist, the Receiver shall immediately notify the parties and shall procure sufficient all-risk and

8  liability insurance for the Property (including, if appropriate, earthquake coverage) within

9  thirty (30) calendar days of his taking possession of the Property, provided, however, that if the

10  Receivership estate does not have sufficient funds to pay for such insurance, the Receiver shall

11  seek instructions from the Court with regard to whether insurance shall be obtained and how

12  payment therefor is to be made.  If consistent with existing law, the Receiver shall not be

13  responsible for claims arising from the lack of procurement or inability to obtain insurance.

14  **Monthly Reporting:**

15      19.    The Receiver shall prepare and serve monthly statements reflecting the Receiver's

16  fees and administrative expenses, including fees and costs of property managers, accountants and

17  attorneys authorized by the Court, incurred for each monthly period in the operation and

18  administration of the Receivership estate.  Upon service of each statement, the Receiver may

19  disburse from estate funds the amount of each statement.  Notwithstanding periodic payment of

20  fees and expenses, fees and expenses shall be submitted to the Court for its approval and

21  confirmation, in the form of either a properly noticed interim request for fees, stipulation of all

22  parties, or Final Report and Accounting.

23  **Further Instruction:**

24      20.    The Receiver and the parties to this case may at any time apply to this Court for

25  further or other instructions or orders and for further powers necessary to enable the Receiver to

26  perform the Receiver's duties properly.

27  **Receiver Certificates of Indebtedness:**

28      21.    Upon further order of the Court after notice to the parties, and to the extent that

**[PROPOSED] MODIFIED ORDER APPOINTING RECEIVER**

the net Revenue derived from the Property is insufficient to satisfy such costs and expenses, the Receiver may borrow such funds as may be necessary to satisfy the costs and expenses of the Receivership from Lender. All amounts borrowed by the Receiver from Lender pursuant to this paragraph shall be deemed secured advances to be added to the balance due to Lender from the Borrower and secured by the Deed of Trust. The Receiver is further authorized to issue and execute such documents as may be necessary to evidence and secure the obligation to repay any advance made pursuant to this paragraph. Concurrent with this Order, the Receiver is authorized to issue to the Lender a Receiver's Certificate of Indebtedness for up to and including Twenty Thousand Dollars (**$20,000.00**); provided however, that the Lender is not obligated to fund that Certificate in whole or in part, and Lender may fund that Certificate from time to time and in such amounts as Lender and Receiver mutually agree is necessary to satisfy the costs and expenses of the Receivership.

22.    Upon further order of the Court after notice to the Parties and to the extent that the net Revenue derived from the Property is insufficient to satisfy such costs and expenses and Lender refuses to lend the monies necessary to fund the shortfall, the Receiver may borrow such funds as may be necessary to satisfy the costs and expenses of the Receivership and may issue a Receiver's Certificate of Indebtedness evidencing the obligation of the Receivership estate (and not the Receiver individually) to repay such sums. The principal sum of each such Certificate, together with reasonable interest thereon, shall be payable out of the next available funds that constitute rents, income, and profits.

**Termination:**

23.    Discharge of the Receiver shall require a Court order after properly noticed motion approving the Receiver's Final Report and Accounting.

**Bankruptcy:**

24.    *Lender's duty to give notice.* If Borrower files a bankruptcy case during the Receivership, Lender shall give notice of the bankruptcy case to the Court, to all parties, and to the Receiver promptly after Lender receives notice of the bankruptcy filing.

25.    *Receiver's duties.* If the Receiver receives notice that the bankruptcy has been

**[PROPOSED] MODIFIED ORDER APPOINTING RECEIVER**

1   filed and part of the bankruptcy estate includes property that is the subject of this order, the

2   Receiver shall have the following duties:

3          a.      *Turn over Property if no relief stay will be sought.*  The Receiver shall

4   immediately contact the party who obtained the appointment of the Receiver and determine

5   whether that party intends to move in the bankruptcy court for an order for (1) a determination

6   that Revenue in the hands of the Receiver is not property of the debtor or of the debtor's estate

7   (Cal. Civ. Code § 2938), or for relief from automatic stay, and (2) relief from the Receiver's

8   obligation to turn over property (11 U.S.C. § 543).  If the party has no intention to make such a

9   motion, the Receiver shall immediately turn over the Property to the appropriate entity – either to

10  the trustee in bankruptcy if one has been appointed or, if not, to the debtor in possession – and

11  otherwise comply with 11 United States Code § 543.

12         b.      *Remain in possession pending resolution.*  If the party who obtained the

13  Receivership intends to seek relief from the Receiver's obligation to turn over the Property, the

14  Receiver may remain in possession and preserve the property pending the ruling on the motion

15  (11 U.S.C. § 543(a)).  The Receiver's authority to preserve the Property shall be limited as

16  follows:

17                 i.      The Receiver may continue to collect rents and other income to

18  preserve the value of the Property;

19                 ii.     The Receiver may make only those disbursements necessary to

20  preserve and protect the Property;

21                 iii.    The Receiver shall not execute any new leases or other long-term

22  contracts; and

23                 iv.     The Receiver shall do nothing that would effect a material change

24  in the circumstances of the Property.

25      26.    *Turn over Property if no motion for relief is filed within 20 days after notice of the*

26  *Bankruptcy.*  If the party who obtained the Receivership fails to file a motion for relief from the

27  Receiver's obligation to turn over the Property within twenty (20) court days after notice to this

28  Court of the bankruptcy filing, the Receiver shall turn over the Property to the appropriate entity

**[PROPOSED] MODIFIED ORDER APPOINTING RECEIVER**

1    – either to the trustee in bankruptcy if one has been appointed or, if not, to the debtor in

2    possession – and otherwise comply with 11 United States Code section 543.

3        27.    *Retain bankruptcy counsel.*  The Receiver may petition the Court to retain legal

4    counsel to assist the Receiver with issues arising out of the bankruptcy proceedings that affect

5    the Receivership.

6    **TURNOVER ORDER**

7    **IT HEREBY IS FURTHER ORDERED** that:

8        28.    Defendants, and their agents, members, partners, property managers, officers,

9    employees, assignees, successors, representatives, and all persons acting under, in concert with,

10   or for any of them, and each of them:

11       a.    Shall immediately relinquish and turn over possession of the Property to

12   the Receiver;

13       b.    Shall immediately turn over to the Receiver and direct all property

14   managers and other third parties in possession thereof to turn over all keys, leases, books,

15   records, books of account, ledgers, operating statements, budgets, real estate tax bills, insurance

16   policies, and all other business records relating to the Property, wherever located, and in

17   whatever mode maintained, including information contained on computers and any and all

18   software and access or pass codes relating to the ownership, operation, and/or management of the

19   Property and/or improvements thereon, as well as all banking records, statements and cancelled

20   checks;

21       c.    Shall immediately turn over to the Receiver all written contracts, budgets,

22   leases and all other documents, instruments and agreements that affect the Property or the

23   ownership, operation, use, management, occupancy, maintenance, repair, improvement or

24   development thereof or construction of improvements of conduct of business thereon and shall

25   immediately provide the Receiver with the Federal Taxpayer Identification Number used in

26   connection with the operation of the Property;

27       d.    Shall immediately advise the Receiver as to the full and complete nature

28   and extent of insurance coverage on the Property, and shall reasonably cooperate in any manner

12 of 16

**[PROPOSED] MODIFIED ORDER APPOINTING RECEIVER**

1  necessary to have the Receiver named as an additional insured on the insurance policy(ies) for
2  the Property;

3          e.      Shall immediately turn over to the Receiver any and all Revenue,
4  collections, rents and other monies (including, but not limited to, room deposits, accounts,
5  security deposits and prepaid rent) relating to the Property and/or improvements thereon
6  hereafter received, and all interest of said Borrower and said other persons in or to such rents and
7  other monies previously received; and

8          f.      Shall immediately turn over all materials, documents, paperwork,
9  contracts, instruments, notes, files, entitlements, permits and any other items or things arising
10 from or related to and concerning any and all development and/or entitlement work and
11 activities.

## DUTY TO PROVIDE ACCESS AND COOPERATION TO THE RECEIVER

13 **IT HEREBY IS FURTHER ORDERED** that:

14     29.    (a) the Defendants, and (b) all of the Defendants' current and former members,
15 managers, directors; officers, employees, agents, accountants, legal counsel and shareholders,
16 and all other persons or entities controlled by Defendant or acting on its instructions or behalf,
17 (all of the foregoing, collectively being "Persons" and each being a "Person") shall forthwith
18 advise the Receiver of the existence of any Property in such Person's possession or control, shall
19 grant immediate and continued access to the Property to the Receiver, and shall deliver all such
20 Property to the Receiver upon the Receiver' request.

21     30.    **IT HEREBY IS FURTHER ORDERED** that all Persons shall forthwith advise
22 the Receiver of the existence of any books, documents, securities, contracts, orders, corporate
23 and accounting records, websites, and any other papers, records and information of any kind
24 related to the Business or other affairs of Defendants NASSER PALIZBAN, QUALITY
25 DISCOUNT ICE CREAM DISTRIBBUTORS, INC., CYRUS CARROLL, LLC., KAMRON
26 EVERGREEN, LLC., and PLE MANAGEMENT, LLC and any computer programs, computer
27 tapes, computer disks, or other data storage media containing any such information (the
28 foregoing, collectively, the "Records") in that Person's possession or control, and shall provide to

**[PROPOSED] MODIFIED ORDER APPOINTING RECEIVER**

1   the Receiver or permit the Receiver to make, retain and take away copies thereof and grant to the

2   Receiver unfettered access to and use of accounting, computer, software and physical facilities

3   relating thereto, provided however that nothing in this paragraph or any other paragraph of this

4   Order shall require the delivery of Records, or the granting of access to Records, which may not

5   be disclosed or provided to the Receiver due to the privilege attaching to attorney-client

6   communication or due to statutory provisions prohibiting such disclosure.

7       31.   IT HEREBY IS FURTHER ORDERED that if any Records are stored or

8   otherwise contained on a computer or other electronic system of information storage, whether by

9   independent service provider or otherwise, all Persons in possession or control of such Records

10  shall forthwith give unfettered access to the Receiver for the purpose of allowing the Receiver to

11  recover and fully copy all of the information contained therein whether by way of printing the

12  information onto paper or making copies of computer media or such other manner of retrieving

13  and copying the information as the Receiver in its discretion deems expedient, and shall not alter,

14  erase or destroy any Records without the prior written consent of the Receiver. Further, for the

15  purposes of this paragraph, all Persons shall provide the Receiver with all such assistance in

16  gaining immediate access to the information in the Records as the Receiver may in its discretion

17  require including providing the Receiver with instructions on the use of any computer or other

18  system and providing the Receiver with any and all access codes, account names and account

19  numbers that may be required to gain access to the information.

20  ## RESTRAINING ORDER / PRELIMINARY INJUNCTION

21  IT HEREBY IS FURTHER ORDERED that:

22      32.   Plaintiff shall post a bond in the amount of Five Thousand ($5,000) dollars in

23  association with the imposition of the following restraining order.

24      33.   Defendants, their respective agents, partners, property managers, employees,

25  assignees, successors, representatives, and all persons acting under, in concert with, or for any of

26  them, and each of them:

27          a.   Shall not enter upon or in any other manner use or occupy the Property or

28  any portion thereof;

**[PROPOSED] MODIFIED ORDER APPOINTING RECEIVER**

1          b.      Shall not suffer or commit or permit any waste, impairment or
2   deterioration of the Property or any part thereof;

3          c.      Shall not remove, demolish or materially alter, or permit to be removed,
4   demolished or materially altered, any improvement now or hereafter comprising part of the
5   Property;

6          d.      Shall not suffer, commit, or permit to exist any violation of any of (i) laws,
7   (ii) covenants, or (iii) insurability requirements that may affect the Property or any part thereof;

8          e.      Shall not take any action that might invalidate any insurance carried on the
9   Property;

10         f.      Shall not initiate, join in, consent to or acquiesce in any change in any
11  private restrictive covenant, zoning ordinance or zoning classification or conditions of use, or
12  other public or private restrictions limiting the uses that may be made of the Property;

13         g.      Shall not alter the general use of all or any part of the Property; and

14         i.      Shall not directly or indirectly interfere in any manner with the discharge
15  of the Receiver's duties under this Order or the Receiver's possession of and operation or
16  management of the Property.

## HEADINGS

17
18      The headings of the sections and paragraphs of this Order are provided for convenience
19  of reference only and shall not be used to construe, expand, limit or affect in any manner the
20  substantive contents of the section or paragraph.

21
22
23  Dated: March _____, 2016
24              APR 1 4 2016          By: _____
25                                          Earl H. Maas III
26                                    HON. EARL H. MAAS, III
27                                    Superior Court Judge
28

                                    15 of 16
            **[PROPOSED] MODIFIED ORDER APPOINTING RECEIVER**

1

2
### ATTACHMENT A
### LEGAL DESCRIPTION OF PROPERTY SUBJECT TO RECEIVERSHIP

3

4
### PROPERTY 1
**STREET ADDRESS:** 9066 Carroll Way, San Diego, CA 92121 [APN: 343-360-14],

5

6
**LEGAL DESCRIPTION:** PARCEL 3 OF PARCEL MAP NO. 7190 IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, APRIL 25,1978 AS INSTRUMENT NO. 78-165479 OF OFFICIAL RECORDS.

7

8
**ASSESSORS PARCEL NUMBER:** 343-360-14

9
### PROPERTY 2
**STREET ADDRESS:** 17007 Evergreen Pl, City of Industry, CA 91745 [APN: 8242-024-081].

10

11
**LEGAL DESCRIPTION:** All of Parcel 12 and that portion of parcel 13 of parcel map #287, in the City of Industry, County of Los Angeles, State of California, as shown on map filed in book 267, pages 7 to 9 inclusive of parcel maps, in the office a the county recorder if said county lying west of the following described line: Beginning at a point on the North line of said parcel 13, said point being distant South 67 degree 08' 24" East a distance of 11 ft from the Northwest corner of said parcel 13; Thence leaving said North line South 22 degree 51' 36" West a distance of 164.59 feet to a point on the South line of said parcel 13, said point being South 69 degree 49' 36" East 3.27 feet from the Southwest corner of said parcel 13.

12

13

14

15
**ASSESSORS PARCEL NUMBER:** 8242-024-081

16
### PROPERTY 2
**STREET ADDRESS:** 450 S. Melrose Dr., Vista CA 92081 [APN 166-250-29-00],

17

18
**LEGAL DESCRIPTION:** PARCEL B OF PARCEL MAP NO. 18761, IN THE CITY OF VISTA, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JULY 31, 2001 AS FILE NO. 01-534489 OF OFFICIAL RECORDS.

19
PARCEL 2: AN EASEMENT FOR DRAINAGE OVER, UNDER, ALONG, ACROSS AND THROUGH THAT PORTION OF PARCEL A DELINEATED AND DESIGNATED AS "PROPOSED 5' DRAINAGE EASEMENT RESERVED IN FAVOR OF PARCEL B." ON THE PARCEL MAP REFERRED TO IN PARCEL 1 ABOVE.

20

21

22
PARCEL 3: AN EASEMENT FOR VEHICULAR PARKING, VEHICULAR AND PEDESTRIAN INGRESS AND EGRESS, SUBJECT TO THE TERMS CONTAINED IN AND AS DEFINED IN THAT CERTAIN DECLARATION OF COVENANTS , CONDITIONS AND RESTRICTIONS INCLUDING RECIPROCAL EASEMENTS, RECORDED MARCH 10, 2004 AS INSTRUMENT NO. 2004-0196727 OF OFFICIAL RECORDS, OVER, UNDER, ALONG AND ACROSS THE PARKING AREAS, DRIVEWAYS OTHER PARKING-RELATED IMPROVEMENTS, SIDEWALKS AND WALKWAYS OF PARCEL A OF PARCEL MAP NO. 18671, IN THE CITY OF VISTA, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF ON FILE IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, ON JULY 31, 2001 AS INSTRUMENT NO. 2001-534489 OF OFFICIAL RECORDS.

23

24

25

26

27

28
**ASSESSORS PARCEL NUMBER:** 166-250-29-00

---

16 of 16
### [PROPOSED] MODIFIED ORDER APPOINTING RECEIVER

# EXHIBIT L

KRISTA FREITAG
**E3 Advisors**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone:    (213) 943-1374
E-Mail:       *kfreitag@ethreeadvisors.com*

Court-Appointed Receiver

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO – NORTH DIVISION

| | |
|---|---|
| BAHMAN JALALI as Trustee of the JALALI FAMILY TRUST, and BIJAN JALALI as Trustee of the JALALI FAMILY TRUST DATED 8/31/2005, <br><br> Plaintiff, <br><br> vs. <br><br> NASSER PALIZBAN, an individual; and QUALITY DISCOUNT ICE CREAM DISTRIBBUTORS, INC., a California corporation; CYRUS CARROLL, LLC. A California limited liability company, KAMRON EVERGREEN, LLC, a California limited liability company, PLE MANAGEMENT, LLC., a California limited liability company, and DOES 1-25 <br><br> Defendants. | CASE NO.: 37-2015-00035619-CU-OR-NC <br><br> **OATH OF RECEIVER** <br><br> Judge: Hon. Earl H. Maas, III <br> Dept.:  N-28 |

1    I, Krista Freitag, being of lawful age, declare and affirm under penalty of perjury as

2    follows:

3    1.    I am of sound mind, over the age of 18 years, capable of making this Declaration,

4    and personally acquainted with the facts stated herein.

5    2.    On April 11, 2016, this Court signed and entered the Stipulation and Order re:

6    Delayed Implementation of Receivership and on April 14, 2016, this Court signed and entered a

7    Modified Order Appointing Receiver (collectively, the "Court Orders") to take possession and

8    control of the real and personal property commonly known as 450 S. Melrose Dr., Vista CA

9    92081, and collateral for the Loans described in the Complaint filed in this Action.

10    3.    On July 6, 2016, I was advised that the parties are in a position to commence the

11    receivership contemplated in the above-mentioned Court Orders.

12

13    3.    The Court Orders set forth the powers and duties of its Receiver.

14    4.    Having been appointed Receiver in the above-entitled action, I do solemnly swear

15    that I will faithfully perform the duties of Receiver and observe all the instructions of the above-

16    entitled Court.

17

18    Dated: July 8, 2016

19                                  KRISTA FREITAG, Receiver

20

21

22

23

24

25

26

27

28

---

2
OATH OF RECEIVER

# IN THE SUPERIOR COURT
## COUNTY OF San Diego
## STATE OF CALIFORNIA

| | | |
|---|---|---|
| Bahman Jalali as Trustee of the Jalali Family Trust and Bijan Jalali as Trustee of the Jalali Family Trust Dated 8/31/05 | **PLAINTIFF(S)** | BOND OF RECEIVER<br>C.C.P. SECTION 567<br>CASE NO.: 37-2015-00035619-CUORNC |
| vs | | BOND NO.: 4406075 |
| Nasser Palizban and individual and Quality Discount Ice Cream Distributors Inc; Cyrus Carroll, LLC ; Kamron Evergreen LLC; PLE Management LLC | | PREMIUM: 250.00 |
| | **DEFENDANT(S)** | |

**KNOW ALL MEN BY THESE PRESENTS:**

THAT WE, _____ Krista Freitag _____ as Principal, and SureTec Insurance Company, a corporation duly organized and existing under the laws of the State of Texas and duly authorized to execute bonds and undertakings as sole surety, as Surety, are held and firmly bound unto the State of California, in the sum of _____ Five Thousand Dollars and No/100 _____ Dollars ($ 5,000.00 ), lawful money of the United States, for the payment of which well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

**THE CONDITION OF THE ABOVE OBLIGATION IS SUCH THAT:**

WHEREAS, by an order of the Superior Court of the County of _____ San Diego _____ on the _____ 7th _____ of _____ July _____ , 2016 in the above entitled action, the above bounden _____ Krista Freitag _____ was appointed Receiver therein and was directed, before entering upon the discharge of his duties as such Receiver, to execute a bond according to law in said sum above named.

NOW THEREFORE, if the said _____ Krista Freitag _____ shall faithfully discharge the duties of Receiver in the action and obey the orders of the court therein, then this obligation shall be void; otherwise to remain in full force and effect.

DATED THIS _____ 7th _____ day of _____ July _____ , 2016 .

**SureTec Insurance Company**

By: _____
Todd Cady ATTORNEY-IN-FACT

Krista Freitag

By: _____

SURETY ADDRESS FOR SERVICE:
3033 5th Ave, Suite 300
San Diego, CA 92103

PRINCIPAL ADDRESS FOR SERVICE:
355 South Grand Ave. #2450
Los Angeles CA 90071

CAReceiver
Version 11 2011

POA #: 510128

# SureTec Insurance Company
## LIMITED POWER OF ATTORNEY

*Know All Men by These Presents,* That SURETEC INSURANCE COMPANY (the "Company"), a corporation duly organized and existing under the laws of the State of Texas, and having its principal office in Houston, Harris County, Texas, does by these presents make, constitute and appoint

Todd Cady

its true and lawful Attorney-in-fact, with full power and authority hereby conferred in its name, place and stead, to execute, acknowledge and deliver any and all bonds, recognizances, undertakings or other instruments or contracts of suretyship to include waivers to the conditions of contracts and consents of surety for:

Five Million and 00/100 Dollars ($5,000,000.00)

and to bind the Company thereby as fully and to the same extent as if such bond were signed by the President, sealed with the corporate seal of the Company and duly attested by its Secretary, hereby ratifying and confirming all that the said Attorney-in-Fact may do in the premises. Said appointment shall continue in force until _____05/18/2017_____ and is made under and by authority of the following resolutions of the Board of Directors of the SureTec Insurance Company:

> *Be it Resolved,* that the President, any Vice-President, any Assistant Vice-President, any Secretary or any Assistant Secretary shall be and is hereby vested with full power and authority to appoint any one or more suitable persons as Attorney(s)-in-Fact to represent and act for and on behalf of the Company subject to the following provisions:
> *Attorney-in-Fact* may be given full power and authority for and in the name of and of behalf of the Company, to execute, acknowledge and deliver, any and all bonds, recognizances, contracts, agreements or indemnity and other conditional or obligatory undertakings and any and all notices and documents canceling or terminating the Company's liability thereunder, and any such instruments so executed by any such Attorney-in-Fact shall be binding upon the Company as if signed by the President and sealed and effected by the Corporate Secretary.
> *Be it Resolved,* that the signature of any authorized officer and seal of the Company heretofore or hereafter affixed to any power of attorney or any certificate relating thereto by facsimile, and any power of attorney or certificate bearing facsimile signature or facsimile seal shall be valid and binding upon the Company with respect to any bond or undertaking to which it is attached. *(Adopted at a meeting held on 20th of April, 1999.)*

*In Witness Whereof,* SURETEC INSURANCE COMPANY has caused these presents to be signed by its President, and its corporate seal to be hereto affixed this 21st day of March, A.D. 2013.

SURETEC INSURANCE COMPANY

By: _____
John Knox Jr., President

State of Texas
County of Harris          ss:

On this 21st day of March, A.D. 2013 before me personally came John Knox Jr., to me known, who, being by me duly sworn, did depose and say, that he resides in Houston, Texas, that he is President of SURETEC INSURANCE COMPANY, the company described in and which executed the above instrument; that he knows the seal of said Company; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said Company; and that he signed his name thereto by like order.



> JACQUELYN MALDONADO
> Notary Public
> State of Texas
> My Comm. Exp. 5/18/2017

Jacquelyn Maldonado, Notary Public
My commission expires May 18, 2017

I, M. Brent Beaty, Assistant Secretary of SURETEC INSURANCE COMPANY, do hereby certify that the above and foregoing is a true and correct copy of a Power of Attorney, executed by said Company, which is still in full force and effect; and furthermore, the resolutions of the Board of Directors, set out in the Power of Attorney are in full force and effect.

Given under my hand and the seal of said Company at Houston, Texas this ____7th____ day of ____July____, 2016, A.D.

_____
M. Brent Beaty, Assistant Secretary

**Any instrument issued in excess of the penalty stated above is totally void and without any validity.**
**For verification of the authority of this power you may call (713) 812-0800 any business day between 8:00 am and 5:00 pm CST.**

## INDIVIDUAL ACKNOWLEDGMENT

State/Commonwealth of _California_

County of _San Diego_ } ss.

On this the _7th_ day of _July_ , _2016_ , before me,
           _Day_                    _Month_              _Year_

_Linda Rae Franklin_ the undersigned Notary Public,
*Name of Notary Public*

personally appeared _Todd Cady_ ,
                                                                *Name(s) of Signer(s)*

☒ personally known to me – OR –

☐ proved to me on the basis of satisfactory
   evidence

LINDA RAE FRANKLIN
COMM. #2084879
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Commission Expires
MAY 18, 2018

to be the person(s) whose name(s) is/are subscribed
to the within instrument, and acknowledged to
me that he/she/they executed the same for the
purposes therein stated.

WITNESS my hand and official seal.

_Linda Rae Franklin_

*Signature of Notary Public*

_____

_____

*Place Notary Seal/Stamp Above*

*Any Other Required Information*
*(Printed Name of Notary, Expiration Date, etc.)*

─────────────── **OPTIONAL** ───────────────

*This section is required for notarizations performed in Arizona but is optional in other states. Completing this*
*information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)  Item #25936

# EXHIBIT M

<u>**Summary Of Past Appointments Of E3 Advisors**</u>
<u>**As Ch. 11 Trustee In Actions Before**</u>
<u>**United States Bankruptcy Court, Southern District of California**</u>

Akhtarzad | Los Angeles, CA

An E3 principal was appointed as Chapter 11 Trustee for this individual bankruptcy case that primarily involved ownership interests in 35 commercial properties valued at $236 million. The Trustee was able to negotiate a consensual plan with the primary secured creditors, and have the plan confirmed within 6 months of his appointment. The case had previously languished as a debtor in possession case for the prior 18 months.

EquiPoint Financial | San Diego, CA

A mortgage and financial firm which filed for Chapter 11 bankruptcy protection during the recent real estate downturn. Initially appointed as Accountants for the Outsider Creditors Committee to analyze insider and avoidance claims, to perform a valuation and liquidation plan analysis, and to review litigation claims, an E3 principal was ultimately named as the Plan Trustee to conduct the final liquidation, analysis of claims, and distribution of recovered assets to creditors.

Mark Prebe | Long Beach, CA

An E3 principal was appointed Chapter 11 Trustee for this individual bankruptcy involving a large personal residence, and 8 rental properties, including several transitional homeless properties. In addition to taking over the properties, bringing in a property management company, and being involved in the sale of properties, the Trustee had to conduct a forensic accounting review of the prior reporting of income by the Debtor.

National Debt Defense | San Diego, CA

An E3 principal was appointed Accountants for the Debtor in order to analyze and review financial operating results, prepare forecasts and projections, prepare US Trustee Monthly Operating Reports, and assist in preparing a final Chapter 11 liquidating plan.

Pacers | San Diego, CA

An adult entertainment establishment, whose owners filed for voluntary bankruptcy protection due to litigation. An E3 principal was appointed as Chapter 11 Examiner to investigate related party contracts, and to investigate and opine on whether a related party sale, third party sale, or reorganization was in the best interest of creditors. The recommendation made ultimately resulted in the replacement of the debtor in possession by an independent trustee.

Protron Digital Corporation | Ontario, CA

A company which imported and sold electronic products, including televisions, DVD players and home theatre systems, to retailers. An E3 principal initially managed the project on behalf of the receiver; and then ultimately, placed the company in Chapter 11 bankruptcy protection primarily to preserve preference payment and other insider claims. The project involved the recovery of cash, the liquidation of assets, the closing down of the company's operations, and a forensic review of how and where funds were diverted from the business.

Richard Cheroske | Lakeside, CA

An E3 principal was appointed as Chapter 11 Trustee in this individual bankruptcy case in order to investigate related party transactions, attempt to settle partnership disputes involving numerous real estate properties and legal entities, and investigate transfers of assets from the bankruptcy estate.

TRI National Development | San Diego, CA & Mexico

An investment scheme which defrauded investors in order to enrich the owners and invest in land and other ventures. As project manager for the Chapter 11 Trustee, an E3 principal administered the bankruptcy estate, filed all necessary reports with the US Trustee and assisted in the liquidation of the real properties located in Mexico.

Ultra-Flex Moulding | Escondido, CA

A flexible residential moulding product manufacturer for building contractors and construction firms. An E3 principal was appointed as Chapter11 Trustee to operate, and ultimately market and sell the company through a Court conducted auction process. The project included analyzing insider and preference payments, and preparing and executing a finalized distribution plan to creditors.  The Trustee was able to sell the business for $60,000 more than the original sale previously arranged by the Debtor.

Vail Lake Resort | Temecula, CA

An E3 principal was appointed as Chief Restructuring Officer ("CRO") for this 10,000 acre resort, RV park and entertainment venue and filed for Chapter 11 protection in order to avoid a taxing authority foreclosure. The CRO managed the property as a debtor in possession during the reorganization. The CRO negotiated a settlement with the principal secured creditors, and sold the property in a $50 Million transaction to the Rancho California Water District. Despite numerous legal and creditor claims, the CRO achieved a plan confirmation paying creditors, including payments to unsecured creditors. The CRO was then appointed as Liquidating Trustee to resolve outstanding issues in the case and make final distributions.

Xelan | San Diego, CA

A Bankruptcy and Accounting project involving companies which provided various investment and insurance services to a network of doctors, until they ran afoul of the IRS and various other

federal agencies. As project manager for the receiver, an E3 principal was responsible for depositing of funds, preparing of sources and applications of funds schedule, performing various financial analyses and cash flow projections, performing a true-up of commingled entity operations, and reporting to the US Trustee.

# THOMAS C. HEBRANK, CPA, CIRA

PROFESSIONAL
EXPERIENCE:

| | | |
|---|---|---|
| 2008 - Present | **E3 Advisors** | San Diego, CA |

Established consulting firm specializing in the areas of problem resolution and fiduciary services including:

- Receiverships
- Bankruptcy Trustee, Examiner & Accountant
- Forensic Accounting
- Expert Witness Testimony
- SEC Receiverships & Ponzi Schemes
- Special Master Assignments
- Assignments for the Benefit of Creditors
- Liquidating Trusts
- Asset Management
- Cash Flow Analysis and Budgeting
- Workout Strategies

| | | |
|---|---|---|
| 2002 – 2008 | **Douglas Wilson Companies** | San Diego, CA |

Senior Managing Director – Workout Division

Responsibilities included managing a wide range of receiverships, bankruptcies, workouts, and forensic accounting projects.

- Managed and performed various forensic accounting projects, including the settlement of partnership disputes, determining appropriate investments by and distributions to various parties, and interpreting and applying the financial terms of a purchase and sale transaction.
- Served as Project Manager for numerous receiverships, including both operating companies such as an investment firm, a transportation company, a furniture store, and an electronics reseller; as well as various real estate projects, including condominium conversions, residential developments, apartments, high-rise office towers, hotels, and country clubs.
- Oversaw and managed several large bankruptcy cases including a ponzi scheme/development company, an insurance and investment firm, and an electronics distributor. Responsibilities included developments of workout plans and reporting to the US Trustee.
- Directed the liquidation of a major real estate investment trust through a liquidating trust process.

**E3 Advisors**   501 W Broadway, Suite 800   San Diego, CA 92101   ethreeadvisors.com

| 1999 - 2002 | **Prudential Real Estate and Relocation Services** | Irvine, CA |
| | Assistant Controller/Director of Planning & Analysis | |

| 1990 - 1999 | **Self-Employed Certified Public Accountant** | San Diego, CA |

Established independent accounting and consulting practice working primarily with real estate companies.  Performed management consulting work for the Resolution Trust Corporation ("RTC").

| 1988 - 1990 | **The Prudential Real Estate Affiliates, Inc.** | Dallas, TX |
| | Regional Accounting Manager - Central Region | |

| 1986 - 1988 | **Title USA Insurance Corporation** | Dallas, TX |
| | Director of Corporate Audit/Accounting Systems Manager | |

| 1984 - 1986 | **Centerre Bank Northland** | Kansas City, MO |
| | Vice President/Controller | |

| 1982 - 1984 | **Price Waterhouse** | St. Louis & Kansas City, MO |
| | Staff Auditor | |

EDUCATION &          **Rockhurst College**                                   Kansas City, MO
PROFESSIONAL      BSBA Degree – Accounting Major
LICENSES:

- Certified Public Accountant – California
- Certified Insolvency and Restructuring Advisor
- California Receivers Forum – Loyola II, III, IV and V (2004 – 2013) - Receivership Administration, Procedures, Law & Practice
- Chapter 11 Bankruptcy Trustee, Southern District of California

AFFILIATIONS

- Board Member – City of San Diego Audit Committee
- Former Board President – San Diego City Employees' Retirement System (Pension Board)
- Former Chairman, Kensington Talmadge Planning Committee
- Former Representative on San Diego City Planning Commission
- Board of Directors, San Diego Receivers Forum
- Former Director, San Diego Bankruptcy Forum